Sylvia L. Brinson ROBERSON

v.

GREAT AMERICAN INSURANCE COM-
PANIES OF NEW YORK.

Civ. A. No. 12182.

United States District Court
N. D. Georgia,
Atlanta Division.

March 31, 1969.

Howard Moore, Jr., and Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, and Gabrielle Kirk, Norman C. Amaker, Robert Belton, Vilma Martinez Singer, New York City, for plaintiff.

Sanford H. Markham, New York City, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

This case comes before the court on defendant's motion to require further answers by the plaintiff to its initial interrogatories and on defendant's motion to strike.

The plaintiff, a Negro high school graduate with three years of college education, answered an advertisement for employment as a file clerk with the defendant on October 10, 1966. Upon application, she was given two five-minute tests by the defendant, prepared, according to the defendant, by Industrial Psychology, Inc., an independent commercial testing firm. Defendant states that the plaintiff received a "2" on the mathematical test and a "3" on the perception test, both below the score of "4" required for qualification for the position.

The precise circumstances surrounding the plaintiff's examination are shrouded in controversy. Thus, for instance, plaintiff contends that she was told by one of the defendant's employees after the test that she had done "well" on the examination and would be notified shortly. However, plaintiff states that she was never called and only after several weeks of checking was she able to find, on October 21, 1966, that she had been rejected. There also appears to be disagreement over whether the test scores are the sole criteria for employment as a file clerk, whether whites have been hired with lower test scores, and whether the defendant permits retesting.

On October 27, 1966, shortly after notification of her rejection, the plaintiff filed an unsworn charge of discrimination in hiring with the Equal Employment Opportunity Commission (hereinafter referred to as EEOC or the Commission). An amended, sworn charge

was executed on January 27, 1967. In a May 9, 1968 letter, the EEOC notified the plaintiff of the existence of reasonable cause to believe that unlawful employment practices had occurred in violation of Title VII of the Civil Rights Act of 1964, and that the Commission would attempt to eliminate these practices by conciliation. In a letter sent September 23, 1968 and, according to the plaintiff, received on September 26, 1968, the Commission notified the plaintiff of its failure to secure voluntary compliance by the defendant, whereupon the plaintiff filed this suit as a class action with the court on October 25, 1968. In her complaint the plaintiff asks the court to grant a preliminary and permanent injunction against the defendant's discriminatory practices, such as withholding employment opportunities from Negroes using invalidated tests, failing to employ total personnel assessment in hiring, and limiting Negroes to lower-paying jobs. The plaintiff asks that the court declare these practices violative of Title VII of the 1964 Civil Rights Act. The plaintiff also asks for an award of back pay for what she would have made had she been employed as a file clerk with the defendant since October, 1966, as well as for costs and attorney's fees. Plaintiff's attorney was appointed by the court and she was permitted to proceed without payment of costs because of financial inability to assume these burdens.

## I. FURTHER ANSWERS TO INTERROGATORIES

Defendant requests the court to order further answers to certain of the first set of interrogatories propounded to the plaintiff, most of which are directed to the class action aspects of the plaintiff's allegation. Plaintiff contends, in response, that all of the information in the plaintiff's immediate possession has been furnished, and that to require further answers would punish plaintiff for her ignorance of defendant's business

practices, require legal conclusions, and revive the forbidden bill of particulars. Because of the number and diversity of interrogatories before the court, the questions and subparts of questions will be divided into categories, rather than treated in strict numerical sequence.

■ 1. First, no further answers are required to several interrogatories, since the plaintiff's responses stand unchallenged by the defendant. In this category are interrogatories 6(c) (i), (d) (i); 9; 11(d), (e); 13(c); 14(e), (g); 15(d); 16(c), (d); 26(c), (d); 28; 29(a); 30; 31; 32; 33; 34.

■ 2. Next, the court considers several interrogatories which the plaintiff has not answered because, as she puts it, "I am not personally familiar with defendant's personnel," or "I am not personally familiar with other applicants for jobs with defendant." These interrogatories include Nos. 1(b), (c); 2(b), (c), (d), [(c) and (d) in part only]; 3; 4(a), (b), (c); 5(b), (c); 6(a), (b), (d) (ii); 8(c); 11(a), (b); 14(h); 15(e); 16(e), in part; 17(b), (c), (d); 18(b); 19(a), (e). Since consideration of the answers to these questions raises a common question, they may be ruled upon together. The answers to these interrogatories are generally in response to questions requesting the names of others who fall within the class the plaintiff seeks to represent in her class action. The plaintiff has not objected to the questions themselves, but rather seems to indicate a lack of knowledge of the names of those in her class. However, by answering only that she is unfamiliar with the defendant's personnel and job applicants, the plaintiff leaves open the possibility that she may in fact know of other persons in the class she seeks to represent. While the plaintiff's answer seems to indicate that the plaintiff is without knowledge of the facts necessary to answer these questions, the plaintiff should so state under oath, for purposes

of absolute clarity. Jachmann Co. v. Marine Office of America, 17 F.R.D. 41 (S.D.N.Y., 1955). However, the court feels that this disclaimer of information is unnecessary as to the answers to interrogatories 4(d); 5(b) (iii); 12(b); 14(b); and 15(b) since plaintiff has clearly indicated that she does not know the answers to these questions. Her answers clearly indicate to the court that the plaintiff is without information to respond to these questions and will be so understood, absent any later indication to the contrary from the plaintiff.

■ 3. Third, several answers involve the citation of the Commission's investigative report which gives facts concerning the defendant's employment practices and employment examination. These interrogatories include Nos. 5(b) (iv); 7(b); 12(a); 13(a); 14(a), (f); 15(a); and 17(a). Defendant contends that the EEOC report cannot be used by the plaintiff in her answers since it "is not a sworn document executed under oath by plaintiff." (Defendant's Motion to Require Further Answers, ¶11.) With this assertion the court takes issue. The language and intent of Rule 33 of the Federal Rules of Civil Procedure make it clear that the scope and use of interrogatories is not limited to matters admissible in evidence, if this be the ground of defendant's obtuse objection. Rule 33 expressly provides that "Interrogatories may relate to any matters which can be inquired into under Rule 26(b), which, in turn, provides that:

"It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

If the inquiry itself cannot be limited to statements admissible in evidence at trial, the interrogating party cannot use the admissibility argument against the interrogated party. 4 Moore, Federal Practice (2d ed.), ¶ 33.11; 2A Barron & Holtzoff, Federal Practice and Proce-

dure (Rules ed.), § 765. Moreover, the plaintiff's failure to swear to the initial charge filed with the Commission does not impair, for purposes of an answer to an interrogatory, the probative value of the Commission's subsequent report. The Commission presumably proceeded in its fact-finding and conciliation process in precisely the same manner it would have had the initial charge been verified by the plaintiff.

■ However, although the report may be used as a reference, the answers, with the exception of the answer to 17(a), are unresponsive and incomplete. Interrogatory 17(a) need not be further answered since the question asked for the source of the plaintiff's allegations and it was given—the EEOC report. But interrogatories 5(b) (iv); 7(b); 12(a); 13(a); 14(a), (f) and 15(a) all ask for a full factual basis for several of the plaintiff's allegations. Mere mention of the EEOC report is insufficient. The plaintiff must point to those portions of the report upon which these allegations were based. The fact that the Commission's report is equally available to the defendant is of no import, since the purpose of the interrogatories is to secure admissions and narrow the issues. 2A Barron & Holtzoff, Federal Practice and Procedure, § 766; Wright, Federal Courts, Ch. 10, § 81.

■■ 4. Fourth, a few of the plaintiff's answers, although objected to by the defendant, require no further answer, since they are "complete, explicit, and responsive." 4 Moore, Federal Practice, ¶ 33.26, at 2403. Included in this category are the answers to interrogatories 8(a) and (b). In 8(a), the plaintiff was asked to define the term "clerical work", mentioned in the allegation, and she enumerated those categories of workers included in her designation. While defendant contends that the answer was incomplete since it failed to state any specific job titles, the plaintiff cannot be expected to know the job designations used by the defendant. Her

use of generic categories is sufficient to bar the need for further answers. Question 8(b) calls for a simple "yes" or "no" answer and since this was supplied, no further answer is required. Neither is an additional response necessary to that given to question 10. There the plaintiff has given the days on which calls were made to the defendant, the parties addressed, and the substance of the conversation. Since the plaintiff took the employment tests on October 10, 1966, which plaintiff states was a Tuesday, the other dates can easily be computed by the defendant without recourse to a further response from the plaintiff. This is not the case of an admission where a response is necessary even though the information is within the interrogating party's knowledge.

The court likewise holds that the answers to interrogatories 20(d) and (f) need not be amplified, if the plaintiff furnishes the transcript necessary for a complete answer. If these two questions concerning the plaintiff's college courses and credits are not supplied by the transcript, the plaintiff's attorney should present answers to the interrogatories by or at the pre-trial conference. The answers to 20(a) and (c) give precisely the information sought by the defendant and are therefore complete. Plaintiff's answer to question 20(b) does not seem to be contested by the defendant, who specifically enumerates other sections of 20 which are opposed. The answer to question 20(e) will be discussed elsewhere.

Defendant also contends that plaintiff's answer to interrogatory No. 21 is incomplete in that:

"[P]laintiff should state under oath if she does not claim any qualifications for the position of file clerk other than those stated in her answers to the preceding paragraphs." (Defendant's Motion for Further Answers, ¶ 20.)

However, plaintiff's answers to both 21(a) and (b) are sufficiently complete to obviate the need for further answers. Thus, 21(b) asked for factors which would negate plaintiff's qualifications for file clerk and she stated she knew of none. No. 21(a) asks for additional qualifications other than educational background and plaintiff specifically states that she is unable to give any additional skills "that might be useful." This amounts, in the court's estimation, to the very admission the defendant seeks, and, subject to correction from the plaintiff, the court will take it as such an admission.

■ Last, the court is also of the opinion that the answer to question 7(a) is complete. It merely asks if the plaintiff's contention concerning the number of Negroes employed by the defendant refers to the total number of employees or only to the total number of clerical workers. Plaintiff's answer—both—is entirely responsive. Defendant objects to the answer on the ground that no dates are specified, but the interrogatory asked for none and the defendant cannot now broaden its initial question through an objection.

5. Fifth, just as several of the plaintiff's answers are clearly adequate, even though contested, so too numbers are clearly incomplete and demand further response. When an answer to an interrogatory is incomplete or insufficient, a proper remedy for requiring a further answer is provided under Rule 37(a) of the Federal Rules of Civil Procedure. 4 Moore, Federal Practice, ¶ 33.25[3]. Just as the district courts have broad discretion in ruling on objections to interrogatories, so too do the courts have wide latitude in requiring further answers to questions. 2A Barron & Holtzoff, supra, § 766. The court exercises this discretionary power in the following instances and for the following reasons to require further answers by the plaintiff: 6(c) (ii); 11(c), (f); 13(b); 14(j); 16(f); 18(a); 19(b), (c), (d); 22(a); 23; 24(a), (b); 25(a), (b), (c); 26(a), (b); 27; 29(b). Individu-

al consideration of each is necessary because of the diversity of answers each interrogatory has elicited.

██ Number 6(c) (ii), which asks the nature, time, and manner of the defendant's discrimination, deserves a more complete and detailed response than that given by the plaintiff, whose answer was:

"The racial refusal to give me a proper test or to evaluate me for a position properly and fairly; I don't know the names of the company employees and officials responsible."

Such a vital question deserves a more complete response.

██ Interrogatory 11(c) asks if the plaintiff contends she received a higher test score than two white employees who allegedly had taken the test at the same time as plaintiff and were hired. While plaintiff answers that she does not know the scores of these two white employees, the plaintiff should still answer whether or not she *contends* she did better than they, for she may later find information to support this contention. Therefore, a "yes" or "no" answer is required. Plaintiff's answer to 11(f) is also deficient, in that it fails to state any of the facts upon which the plaintiff's allegation is based. This must be corrected by further answer.

Interrogatory 13(b) is addressed to the precise circumstances surrounding defendant's alleged statement that the company's test scores were the sole criteria for employment. Plaintiff's answer refers to several conversations she had with defendant's employees, but it remains unclear if each person mentioned gave plaintiff this message. Plaintiff should clear up this uncertainty by stating which employee or employees told her of the weight accorded the test scores, as well as the circumstances surrounding the statement or statements.

Interrogatory 14(j) asks if the plaintiff alleges that the defendant selected the test taken by plaintiff in order to discriminate against the plaintiff. The plaintiff, while not objecting to the question, has only answered that, "If defendant did not intend to discriminate, it would not have used unvalidated tests." A more responsive answer is necessary to end an ambiguity left by the initial answer.

Interrogatory 18(a) asks the plaintiff to explain the meaning of the phrase "high test scores", included in the plaintiff's allegation that Negroes with high test scores have been rejected for employment by the defendant. Plaintiff merely stated that she meant higher than average, without discussing to which average she refers. A more complete answer is desirable, if available, to explain what the plaintiff means by higher than average, and thus to more fully define her initial answer of "high test scores."

Questions 19(b), (c), and (d), which went unanswered because of the plaintiff's answer to 19(a), must be answered if the information requested in 19(a) is, in fact, known to the plaintiff, and if the facts necessary to answer (b), (c) and (d) are in the plaintiff's possession.

██ Question 22(a) requests specific information about the advertisement in which plaintiff saw the defendant's file clerk position offered. The exact date and page number of the Sunday paper in which the advertisement appeared should be provided by way of further answer. If the plaintiff is without knowledge of these facts, she should so state under oath, as the defendant requests. Unlike the answer to interrogatory 10, discussed above, the day mentioned in plaintiff's answer—a Sunday in early October, prior to October 10, 1966, no doubt—is not so clear as to permit the defendant to easily compute the date. There may have been more than one Sunday in early October.

Question 23 also requires a further answer, although the plaintiff need not

give more detailed information about her pre-college examinations if, as she states, her transcript will provide that information. If the transcript does not provide the requested information, it should be provided the defendant by the time of or at the pre-trial conference. As to the other tests enumerated, the plaintiff should provide, where available, exact dates, scores, and the occasions for the examinations, as well as whether or not she contends they too were discriminatory. However, no explanation of the bases of the possible contention that one or more of these tests is relevant or necessary at this time.

Question 24(a) requests the names of the institutions with whom plaintiff has previously applied for employment. Plaintiff's answer leaves it unclear if she actually applied for employment with all places listed in her answer to question 23, as well as whether there are other firms to which she has applied, not therein mentioned. For this reason a further answer is necessary here, including all places, times, and results of prior job applications. Likewise, plaintiff should make it clear by way of further answer to question 24(b) that the employers to which she refers in answer to No. 25(a) are the only ones with whom she has been employed in the past five years.

Question 25(a) requires a further answer in terms of exact dates of employment; 25(b) necessitates a definite answer that no further efforts were made than those mentioned in 25(a) and 23; and 25(c) needs amplification as to the total compensation received by the plaintiff since October 10, 1966, since this will be important for computation of damages.

■ Plaintiff's answer to interrogatory 26(a) should include the date on which she filed a charge of discrimination against Retail Credit Company with the Commission and, if available, the date on which the Commission found probable cause for discrimination. If plaintiff is without knowledge of these facts, she should so state under oath. However, plaintiff is under a continuing duty to supply, when it arrives, the date of her 30-day letter from the EEOC. 4 Moore, Federal Practice, ¶ 33.25 [4]; 2A Barron & Holtzoff, Federal Practice and Procedure, § 777.1; Coyne v. Monongahela Connecting R.R., 24 F.R.D. 357 (W.D.Pa., 1959).

■ Plaintiff's answer to interrogatory 27 presents a problem. The question asks for additional contentions against the defendant not covered in the plaintiff's responses to the interrogatories. The plaintiff should not be required to search through her answers to determine if any other discrimination is charged. The gravamen of defendant's request is to determine exactly what acts of discrimination are charged. Therefore, the best solution is to require the plaintiff to precisely restate the acts of discrimination with which she charges defendant.

Last, interrogatory 29(b), asking whether plaintiff would be willing to take defendant's "complete battery of tests", should be answered to the extent of the two tests she originally took on October 10, 1966.

6. Sixth, the remainder of the interrogatories are objected to by the plaintiff on the ground that a legal conclusion is involved. The law is currently in a great state of flux with reference to whether—and if so, the extent to which —interrogatories may delve into questions calling for opinions, contentions, and conclusions by the interrogated party. A myriad of cases could be cited for the proposition that the interrogated party is not required to give opinions, contentions, or conclusions. So too are questions requiring a determination of questions of law often held improper. See, e. g., 2A Barron & Holtzoff, § 768 and cases cited therein at n. 84. Courts have reasoned that "it is the ascertain-

ment of facts that is the object of discovery proceedings as contrasted with opinions, conclusions, or contentions." Cinema Amusements, Inc. v. Loew's, Inc., 7 F.R.D. 318 (D.Del., 1947).

However, as Professor Moore notes in sharply criticizing this notion,

"The rules do not say that only 'facts' may be the object of discovery proceedings." 4 Moore, ¶ 33.17, at 2354.

There is a discernible trend away from sustaining broad use of objections based upon conclusions, contentions, and opinions. Some courts have completely abandoned this objection and have adopted a more flexible approach of permitting an answer if it serves a substantial purpose. See, e. g., Gagen v. Northam Warren Corp., 15 F.R.D. 44 (S.D. N.Y., 1953). As Moore puts it:

"If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer." 4 Moore, ¶ 33.17, at 2355.

Professor Moore and numerous courts have applied this approach to matters of opinion, conclusions, and contentions of the parties.

Any rule which attempts to make rigid distinctions between matters of fact and conclusions of fact will prove unworkable, since the differences between the two categories are ones of degree, not kind. Wright, Federal Courts, Ch. 10, § 86. This court has already held that factual conclusions should be permitted, absent compelling reasons to the contrary. Reynolds v. Southern Ry., 45 F.Supp. 526, N.D.Ga., Dec. 13, 1968. Moreover, rigid opposition to questions concerning a party's contentions is obsolete. One of the chief reasons behind the liberal pleading rules of federal procedure is that adverse parties can obtain detailed information about the subject matter through discovery, rather than the pleadings. Thus,

"Under these circumstances, to say that 'contentions' are not a proper subject of interrogatories is to subvert the whole theory of the rules and to make it more difficult for the party to find out what the case against him is about than it was under the old practice." Ibid, at 2356.

However, some commentators are not so sanguine about the new liberality allowed in interrogatories, particularly as they relate to a party's contentions. James, The Revival of Bills of Particulars Under the Federal Rules, 71 Harv. L.Rev. 1473 (1958); Wright, Federal Courts, Ch. 10, § 86. They fear that the more liberal decisions are reviving the abolished and discredited bill of particulars and subverting, rather than complimenting, the intent of the generalized pleadings permitted under the Federal Rules. As one treatise puts it:

"The more liberal cases permitting interrogatories as to the contentions of the opponent are not always an unmixed blessing. To the extent that they put an end to attempted distinctions between facts and conclusions, they are desirable. But an argument has been made by a distinguished critic that the cases allowing interrogatories as to contentions have revived, under a different name, the unlamented bill of particulars, which was abolished in 1948. The generalized pleading permitted by the rules has significance beyond the pleading rules themselves. It represents a broad judgment that it is not desirable or feasible to tie a party down at an early stage to a particular theory as to the case, and that judgment must be allowed to go according to the facts as they develop at the trial, not limited by the belief of the party before the trial as to what the facts may be." 2A Barron & Holtzoff, § 768, at 321.

Because of these real concerns, this court does not adopt, in the

absolute, the standard that all questions are permissible if answers to them would serve a useful purpose. Reynolds v. Southern Ry., supra. But at the same time, the court does not feel bound by outmoded considerations of objections based on contentions, conclusions, and opinions. Rather, each interrogatory raising these problems must be considered on its own merits, by practical considerations of whether the need for the information outweighs the prejudice and burden to the interrogated party in divulging it. While the plaintiff here should not be expected to make out the defendant's case, the court recognizes that the purpose of interrogatories is not only to obtain facts, but to narrow and crystallize the issues before the court. 2A Barron & Holtzoff, §§ 761, 768. The time is past when civil trials are "carried out in the dark." Hickman v. Taylor, 329 U.S. 495, 500, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ However, in considering the following interrogatories, one rule has survived the new liberality in discovery: Interrogatories calling for pure conclusions of law are impermissible. 2A Barron & Holtzoff, § 768. The theory behind the stricture seems to be that it is pointless to ask laymen to expound legal theories, which should be left to the interrogated party's attorney at the pre-trial conference and at trial. United States v. Selby, 25 F.R.D. 12 (N.D.Ohio, 1960). Yet, even here, there are cases holding that mixed conclusions of fact and law are permissible. Bullard v. Universal Millwork Corp., 25 F.R.D. 342 (E.D.N.Y., 1960). The court is guided in this thorny area by the understanding that the objecting party, here the plaintiff, has the burden of proof to show that his objections to the interrogatories should be sustained, and that the presumption is in favor of liberal discovery. 2A Barron & Holtzoff, §§ 762, n. 17, 775.

With all of this in mind, the court will proceed to consider the interrogatories which raise the problems just discussed: Nos. 1(a); 2(a), (c), (d); 5(a), (b) (i) (ii); 12(c); 13(d), (e), (f); 14(c), (d), (i); 15(c); 16(a), (b), (e), (f); 20(e); 22(b); 29(c).

■ Question 1(a) asks, with reference to plaintiff's class action, that the plaintiff state each question of law and fact common to the class. The court holds that plaintiff need not express a legal opinion of the common questions of law. However, the plaintiff should relate those common factual elements which the class plaintiff seeks to represent have in common with the plaintiff. While this is conclusionary, this does not, as already shown, per se bar an answer. Defendant cannot defend against a class action unless it has some idea of the factual similarities of the class. This imposes no greater burden on the plaintiff than, for example, the increasingly invoked requirement that the interrogated party specify the facts upon which a claim of negligence is founded. Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163, 165 (E.D.Pa., 1962); see, also, cases cited at 4 Moore, ¶ 33.17, n. 55. The need for the information here outweighs any disadvantage to the plaintiff. The court also requests the plaintiff to answer more completely questions 2(a), (c), and (d), which ask plaintiff to state which claims she asserts are typical of the claims of present and past Negro employees of the defendant. This question does not call for a pure legal conclusion, but deals more with the bases of the plaintiff's contention that she represents present and past employees of the defendant. A complete answer here would clarify an ambiguity as to the breadth of plaintiff's class action. In any event, plaintiff has *not* objected to the questions, but has merely given an unresponsive answer, which must be corrected. For much the same reasons, the court holds that plaintiff must give more complete answers to interrogatories 5(a), (b) (i) (ii). Here again, the plaintiff has *not* objected to the ques-

tions but has given inadequate answers to a question delving into the factual bases of plaintiff's class action.

Interrogatory 12(c) asks whether plaintiff contends a policy of not permitting retesting is racially discriminatory. In form this seems to call for a purely legal, rather than a factual, conclusion. Plaintiff should not be called upon to determine what constitutes racial discrimination. This is a matter best left to plaintiff's attorney. But in substance the question merely requires the plaintiff to state whether, as a matter of fact, her complaint embodies such a contention. If answered only in this way, no legal conclusion will be required of the plaintiff. Rather, she will only be called upon to more fully elaborate her contentions to avoid surprise at trial. Identical logic governs 13(f), which asks if the plaintiff contends that using test scores as the sole criteria in determining who would be hired for file clerk is racially discriminatory. Here, too, plaintiff should be not required to come to legal conclusions, but merely state whether this is, in point of fact, one of her initial contentions. Question 16(f) should be answered in the identical way for the same reasons. There again, if plaintiff merely states whether her contentions embody the question in 16(a), she will not be making a legal conclusion. The answers required will not differ from those given freely by the plaintiff to other questions relating to the plaintiff's allegations. See, e. g., answer to interrogatory 8(b).

Question 13(d) gives the court pause because it contains elements of both opinion and legal conclusion. It asks what other criteria plaintiff feels should be used in determining who should be hired for clerical help, other than tests. Questions 14(c), (d), (i); 15(c); 16(b); 22(b); and 29(c) all ask similar questions. They ask how the two tests given to plaintiff should have been validated for minority groups, the level of statistical significance sought by plaintiff in a job performance validation, and which other tests plaintiff feels she should have been given (14(c), (d), (i); 15(c)); the factors plaintiff feels should be used in hiring personnel for the file clerk position (16(b)); what defendant should put in its job application advertisements (22(b)); and what tests plaintiff would be willing to take and whether or not they are validated (29(c)). The court holds that plaintiff need not answer these interrogatories. First, they call for varying degrees of expertise which plaintiff should not be expected to possess. The court is aware of the line of cases permitting interrogatories as to expert opinion. Moran v. Pittsburgh-Des Moines Steel Co., 6 F.R.D. 594 (W.D.Pa., 1947), cert. denied, Pittsburgh-Des Moines Steel Co. v. Moran, 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770 (1948); Kendall v. United Airlines, 9 F.R.D. 702 (S.D.N.Y., 1949); Sachs v. Aluminum Co. of America, 167 F.2d 570 (6th Cir., 1948). However, these cases involve the taking of opinions from an actual expert, not from a layman. In addition, the court is not stating this point as an iron-clad principle barring an answer in every situation, but merely considers this one factor in the total calculus. Second, these questions all deal with methods of avoiding potential unconstitutional discrimination in hiring, and therefore invoke something approaching a forbidden legal conclusion. Third, they invade the pretrial and trial components of the plaintiff's case, both of which will be handled by an attorney better able to deal with these matters. Uinta Oil Refining Co. v. Continental Oil Co., 226 F.Supp. 495 (D.Utah, 1964). Fourth, at this stage, the answers to these questions are not so essential to the defendant that necessity outweighs the objections to its use. Therefore, in its discretion, the court holds that these questions need not be further answered. For this reason, 13(e) need not be answered, either.

■ The court is of the opinion that question 16(a) must be fully answered. Despite plaintiff's contention to the contrary, this interrogatory does not involve a legal conclusion per se. Rather, it merely asks the plaintiff to explain a term—"total personnel assessment"—that the plaintiff herself introduced in her complaint.

■ Interrogatory 20(e) asks the plaintiff to state the relationship between her college courses and the position of file clerk. It has been held that interrogatories calling for comparison are objectionable. Porter v. Montaldo's, 71 F.Supp. 372 (S.D.Ohio, 1946); Savannah Theatre Co. v. Lucas & Jenkins, 10 F.R.D. 461 (N.D.Ga., 1943), questioned on other grounds, Erone Corp. v. Skouras Theatres Corp., 22 F.R.D. 494, 498, n. 4 (S.D.N.Y., 1958). In light of the increased liberality shown by the courts as to interrogatories, these holdings may have little validity. Moreover, the plaintiff's qualifications for the job may well be the central issue at the trial. Yet, to require plaintiff to relate every course to her application as a file clerk would impose an onerous burden. Therefore, as a balance, the plaintiff should select those courses she feels are most pertinent to her qualifications for the job she sought and briefly explain how they have helped prepare her, either specifically or in general aptitude, for the job of file clerk.

## II. DEFENDANT'S MOTION TO STRIKE

Defendant has also brought a motion to dismiss under Rules 12(b) and 56(b), which is supported by arguments on several contentions.

■ First, the defendant contends that the complaint should be dismissed for lack of subject-matter jurisdiction, since the plaintiff's sworn charge of discrimination was not filed with the EEOC within 90 days after the alleged unlawful employment practice, as re-quired by 42 U.S.C. § 2000e–5(d). Defendant urges that there was no continuing discrimination extending the 90-day limit and that the bare allegation that others in the plaintiff's class were similarly treated is insufficient to make the discrimination alleged of a continuing nature. For reasons which will become obvious, the court need not decide whether the discrimination alleged was continuing or constituted one fully completed act.

42 U.S.C. § 2000e–5(d) states in relevant part that:

"A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment occurred, * * *."

Subsection (a) of § 2000e–5 in turn talks about an aggrieved person filing a charge in writing "under oath". Therefore, defendant reasons that since plaintiff did not file a sworn charge within 90 days, she may not pursue her action in this court. Under the circumstances of this case, the court cannot agree with defendant's position. It seems clear that the 90-day requirement is a jurisdictional prerequisite to suit in a civil action. Cox v. United States, 58 L.C. ¶ 9142 (N.D.Ind., 1968); Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232, (N.D.Ga., 1968). However, this is by no means fatal to plaintiff in this action. Here, plaintiff's initial *unsworn* charge before the EEOC was filed well within the 90-day period. Thus, the real question here is whether plaintiff's subsequent sworn charge, filed on January 27, 1967, could act as an amendment to the initial unsworn charge. The validated complaint was sworn to before an employee of EEOC. The case of Georgia Power Co. v. EEOC, 58 L.C. ¶ 9149 (N.D.Ga., 1968), decided in this District, presented an identical situation. There, the plaintiff was tested for a job on August 10, 1967, and the following day her application for employment was denied. On August 29, 1967, the Commission received an unsworn complaint from the

plaintiff, which was processed and redrafted on an agency form and sworn to November 16, 1967, outside the 90-day period of the statute. Although finding the discrimination alleged involved an isolated rather than a continuing occurrence, the court permitted maintenance of the civil action. The court treated the sworn charge as an allowable amendment to the initial unsworn complaint, which had been filed within the proper time. The court stated that charges lodged before the Commission will generally be of a pro se variety, whose authors will have no knowledge of highly technical niceties of the Civil Rights Act of 1964. The court also felt that it would be unfair to charge the plaintiff with delay in filing the sworn charge occasioned, in fact, by the burden of work before the Commission. The court was evidently saying that had the Commission processed the plaintiff's complaint more expeditiously, they might have gotten a form on which a validated charge could have been made, within the 90-day limit. Last, the court looked to the common law and found that a variation was generally amendable even for technical common law pleadings, *see, e. g.*, Neal v. Davis Foundry & Machine Works, 131 Ga. 701, 63 S.E. 221 (1908). The logic of this holding is compelling and we find it controlling in the instant action to permit plaintiff's suit, as in substantial compliance with the statute's 90-day rule.

Moreover, the verification portion of the requirement has been held to be only administrative, rather than imposing a jurisdictional barrier to a civil action. In Choate v. Caterpillar Tractor Co., 58 L.C. ¶ 9162 (S.D.Ill., 1962), the Court held that a civil action could not be dismissed for failure to allege that the charge filed with the Commission was made under oath, since the verification requirement referred to the administrative rather than the judicial features of the act. As the Court correctly noted, the charge only permits the Commission

to investigate and attempt conciliation; it gives the Commission no enforcement powers. If the Commission goes forward with its proceedings on an unverified charge, as it did in the instant action, this constitutes a permissive waiver of the verification requirement. The Commission's attitude toward verification underscored the Court's conclusion. As the Commission's regulations provide:

> "A charge may be amended to cure technical defects or omissions, including failure to swear to the charge." 29 C.F.R. § 1601.12.

This District adopted the reasoning of *Choate*, supra, in King v. Georgia Power Co. & Local 84, 295 F.Supp. 943 (N.D. Ga., 1968), where the court held that failure to allege that a sworn charge was filed was not a condition precedent to maintenance of a civil action, since verification was merely a technical pleading feature before the Commission. However, the court in the instant action need not rest on the logic of these cases to hold that plaintiff's suit would be proper even if a later sworn charge had not been filed, because of the Court's holding concerning the applicability of Georgia Power Co. v. EEOC, supra. But it seems evident that if a sworn charge need not be alleged because of the nonjurisdictional nature of the requirement, then a sworn charge need not be filed within 90 days, only a charge. See Pullen v. Otis Elevator Co., 58 L.C. ¶ 9133 (N.D.Ga., 1968).

 Second, defendant argues that the plaintiff has no cause of action under any of the statutory sections pleaded. In her initial complaint, plaintiff stated that her rights were protected under "42 U.S.C. §§ 2000-2(2) (a) (1) (2) and (b) and 2000e-2(d)" [*sic*]. Defendant interpreted this to mean §§ 2000e-2(a) (2), 2(b), and 2(d). Defendant then proceeds to demonstrate that each section is inapplicable to the present facts. Plaintiff, in filing her response to defendant's motion to dis-

miss, filed an amendment correcting what she states was a typographical error in the initial complaint, and thus suing under §§ 2000e–2(a) (1), 2(a) (2), and 2(h) of Title 42 U.S.C. The court sees no reason why the amendment should be denied. In any case, the court can find jurisdiction on its own motion at any time. Therefore, the court holds that jurisdiction lies in the court under 42 U.S.C. § 2000e–2(a) (1), which states that:

"(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

Plaintiff alleges a racially motivated refusal to hire and therefore comes within the clear dictate of § 2000e–2(a) (1). Parham v. Southwestern Bell Telephone Co., 58 L.C. ¶ 9147 (E.D.Ark., 1968).

Third, defendant contends that plaintiff cannot state a claim for relief under 42 U.S.C. § 1981, one of the statutes upon which plaintiff bottoms this court's jurisdiction. Defendant urges that § 1981 applies only to state action in deprivation of civil rights, and not to the actions of individuals, and that even if the section applies to private action, plaintiff has alleged no deprivation by defendant of her rights under the statute. The court feels, however, that if the statute is applicable to private action as well as state action, plaintiff's complaint is sufficient to state a cause of action under the statute.

Until very recently, chapter and verse could be cited in support of defendant's argument that § 1981 applied only to state action. Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879); Blocker v. Board of Ed. of Manhasset, N. Y., 226 F.Supp. 208 (E.D.N.Y., 1964), reargument denied, Spampinato v. M. Berger & Co., 176 F.Supp. 278, cert. denied, 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363 (1960); Chicago's Last Dept. Store v. Indiana Alcoholic Beverage Commission, 161 F.Supp. 1 (N.D.Ind., 1958). However, this principle has been thrown into grave doubt by the impact of Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (per Stewart, J.). Jones involved 42 U.S.C. § 1982, passed as part of the same 1866 Civil Rights Act which included the predecessor of § 1981. Section 1982 provides that:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property."

The plaintiffs in that case alleged that defendant refused to sell a home to them because they were Negroes. The lower courts refused to hear the case, holding that § 1982 applied only to state action and not to private refusals to sell. The Supreme Court reversed the lower courts by holding that § 1982 bars *all* discrimination in the sale and rental of property, and that given this reading, § 1982 was constitutional under the Thirteenth Amendment. The Court relied on what it felt was the plain and unambiguous language of § 1982, on the legislative history of the 1866 Civil Rights statute, and on the relation between § 1 of the 1866 statute, which was § 1982 in its initial form, and § 2 of the statute, which specifically dealt with state action. The Court held that under the Thirteenth Amendment, Congress had the power to determine what constituted the badges and incidents of slavery and to translate that determination into effective legislation, such as § 1982. The Court then found that whatever else they may have encompassed, the badges and incidents of slavery included restraints upon the right to purchase, lease, sell, and convey property. Re-enactment of § 1982 following passage of the Fourteenth

Amendment was not felt relevant, for purposes of applying the statute to private actions.

Section 1981, part of the same Civil Rights Act which included what is now § 1982, states that:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Despite *Jones*, this court does not feel that § 1981 encompasses every private deprivation of every constitutional right in this court. However, this is not to say that in a case like the instant action, alleging a specific deprivation of a civil right—equal employment, that the action would not lie under § 1981. A judgment would have to be based on similar considerations to those analyzed in *Jones*, such as legislative history, the effect of the Thirteenth Amendment and other salient factors.[1] The court need not reach this problem here, however, because it is clear that jurisdiction is founded under the Civil Rights Act of 1964, 42 U.S.C. § 2000e. With a specific, applicable statute under which an action is brought, the court need not—and should not—give its opinion as to whether jurisdiction lies under a more general statute, such as § 1981.

Fourth, defendant states that plaintiff's complaint does not make out a class action under Rule 23(a) and (b) (2) of the Federal Rules of Civil Procedure. Rule 23(a) provides that:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(b) (2) states that:

"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

"(2) the party opposing the class has acted or refused to act on grounds applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Defendant urges that plaintiff's complaint alleges discrimination in hiring, therefore precluding representation of past or present employees. Moreover, defendant contends that plaintiff's allegations refer to an individual situation, rather than to a general class, and that the class must be limited by the issues raised by the plaintiff's complaint.

The court has no doubt that class actions are permissible under Title VII of the Civil Rights Act of 1964. Banks v. Lockheed-Georgia Co., 58 L.C. ¶ 9131 (N.D.Ga., 1968). Membership in the class is not restricted to those actually filing charges with the Commission. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir., 1968), reversing

---

1. Norman v. Missouri Pacific R. R., 58 L.C. ¶ 9144 (E.D.Ark., 1968), decided shortly after the Supreme Court ruling in *Jones*, held that § 1981 was enacted pursuant to the Fourteenth Amendment and thus depended for its application upon state action.

**420**

Monday v. Crown Zellerbach Corp., 56 L.C. ¶ 9082; Moody v. Albermarle Paper Co., 66 L.C. ¶ 2099 (E.D.N.C., 1967). The Fifth Circuit in *Oatis* has stated broadly that racial discrimination is by definition class discrimination and to require a multiplicity of separate, identical charges before the Commission against the same employer would frustrate the judicial system. However, the Court was careful to point out that the plaintiff must still meet the requirements of Rule 23(a) and (b) (2).

It has been held that no specified number of members is necessary to maintenance of the class action, Cypress v. Newport News General and Nonsectarian Hospital Ass'n, 375 F.2d 648 (4th Cir., 1967), but see Clark v. Thompson, 206 F.Supp. 539, aff'd, 313 F.2d 637, cert. denied, 375 U.S. 951, 84 S.Ct. 440, 11 L.Ed.2d 312. The Advisory Committee on the Federal Rules has said, concerning Rule 23(b) (2), that:

"Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

"Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."

It is a case-by-case question as to which issues are suited for resolution by class action. Certain aspects of this suit, such as back pay, costs and attorney's fees, seem unsuited to disposition in a class action. King v. Georgia Power Co. & Local 84, supra. However, it may well be that a class action is proper as to plaintiff's allegations that defendant employs a system of racial discriminatory hiring, through such devices as allegedly discriminatory tests. Certainly the court finds it difficult to accept defendant's argument that all of the plaintiff's allegations concern her individual situation, although obviously the plaintiff's own situation is detailed. Jenkins v. United Gas Corp., 400 F.2d 28, 33–35 (5th Cir., 1968). Because of the uncertain state of the record at this early date the court will not go further, except to say that there is no reason why the plaintiff could not maintain a class action while also seeking individual relief. See *Jenkins*, supra at 34; *King*, supra. As Judge Smith said in a similar case:

"Due to the nature of pleadings under the federal rules (and we might add in the instant case the incomplete nature of the answers to the interrogatories), the Court at this stage in the litigation can only deal in the somewhat general pronouncements made above. Conflicts as to the impact of these generalizations upon particular situations must await the further development of the evidentiary aspects of the case."

All the court holds now is that with the present state of the record, defendant's motion to dismiss the class action *en toto* must be denied.

Fifth, the defendant moves to strike that part of the plaintiff's complaint containing allegations not in the plaintiff's charge to the Commission. According to the defendant, these extraneous allegations not presented to the Commission include allegations that "None of the Negro employees is assigned to a classification higher than clerical work"; "Negroes have been rejected for employment with high test scores, and numbers of them have not even been given the opportunity to take tests"; and the charge that the defendant has been "limiting them (Negroes) to lower paying jobs." In Edwards v. North American Rockwell Corp., 58 L.C. ¶ 9153 (C.D.Cal., 1968), the plaintiff contended that racial discrimination barred his assignment to a higher job

classification. However, plaintiff's complaint in the civil action contained reference to actions which occurred subsequent to the filing of his charge with the Commission, and therefore had not been included in the charge. The court held that the plaintiff could not sue on allegations he had failed to raise in the charge filed with the Commission. The court reasoned that to permit a civil action based on allegations other than those in the charge would permit a plaintiff to bypass the specific procedures of EEOC investigation and conciliation contemplated by the Act—at least as to the issues not raised before the Commission. Voluntary compliance would therefore be impossible as to these issues. It is important to note that the subsequent issue raised by the plaintiff was entirely unrelated to the initial complaint, as it dealt with his assignment to dangerous work.

Oatis v. Crown Zellerbach Corp., supra, dealt with the relationship between the charge before the EEOC and the complaint filed with the court in a subsequent civil action. In that case, the Fifth Circuit found that a class action could be brought in a civil suit even though only one of the members of the class had filed a charge with the Commission. The Court felt that if kept within proper confines, the class action did not frustrate the purpose of the Act to permit the EEOC to attempt voluntary compliance. The Court reasoned that if a voluntary settlement had failed with one member of the class, there was no reason to think it would be more successful with the next person raising the same issue before the same employer. However, to keep the class action within proper confines, the Fifth Circuit stated that the plaintiff could raise only issues as to which he was aggrieved and which he had raised in his charge to the Commission. Therefore, in the instant action, plaintiff Roberson may only raise those aspects of the class action which relate to issues she herself has standing to raise. She has no standing to raise issues not before the Commission.

King v. Georgia Power Co. & Local 84, supra, discusses the extent to which the plaintiff is bound by the EEOC charge. The Court there properly recognizes that most charges filed with the EEOC, as the instant action, are lodged by laymen untutored in the technicalities of the law. The plaintiff should not be required in EEOC cases to articulate the full panoply of discrimination she may have suffered. The civil action should merely be limited to that range of issues reasonably related to and growing out of the original charge. As Judge Smith restated in King:

> "The correct rule is that the complaint in the civil action is confined to those issues the original complaint has standing to raise, but may properly encompass any such discrimination like or reasonably related to the allegations of the charge and growing out of such allegations during the pendency of the case before the Commission." See, also, United States v. Mayton, 335 F.2d 153, 161 (5th Cir., 1964).

The rule this court adopts is the one enunciated in King, supra, which "in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer." In this way, the employer is given notice of the range of issues with which he is confronted and no unfair surprise can ensue. At the same time, the purpose of ending discrimination is fostered since the plaintiff is not bound merely by the strict language he may have used. It appears to the court on initial impression that the plaintiff's allegation concerning the classification and pay scale of present Negro employees is beyond the bounds of the initial charge to the Commission and probably beyond the Commission's own conciliation efforts, while the allegation concerning the employment tests may well be within these

limits. However, as the Court stated in *King*, supra, "as to whether the complaint in the instant case falls within the scope of the issues finally framed by the EEOC, this a question that must await the trial of this case." However, this court must issue the same warning as the Court in *King*:

> "It should be emphasized that the EEOC is not free to manipulate the scope of a case beyond the bounds herein expressed. The expansion of a particular charge is limited to the issues that a particular complainant has standing to raise, as become evident from the Court's discussion of the class aspects of this case."

Sixth, the defendant moves to strike certain determinations by the Commission, mentioned in plaintiff's complaint, which the defendant contends are inadmissible and therefore prejudicial. Plaintiff argues that the pleadings are not evidence and that the mere fact the Commission's findings are inadmissible in evidence does not mean, without more, that they should be stricken as immaterial and/or prejudicial. Moreover, plaintiff states that the Commission's determinations are a jurisdictional prerequisite and therefore belong in the pleadings.

The determinations in question are recited in the plaintiff's complaint:

> "Subsequently, in a letter dated May 9, 1968, the Commission notified the plaintiff of the existence of reasonable cause to believe that unlawful employment practices within the meaning of Title VII of the Civil Rights Act of 1964 had been committed; that the Commission would attempt to eliminate such practices by conciliation as provided in Title VII of the Civil Rights Act of 1964; and that plaintiff would be kept informed of the progress of the conciliation efforts. On September 23, 1968, the Commission notified the plaintiff that defendant's compliance with Title VII had not been accomplished."

42 U.S.C. § 2000e–5(a) states, in relevant part:

> "If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as a part of such endeavors* may be made public *by the Commission* without the written consent of the parties, or *used as evidence* in a subsequent proceeding." (Emphasis added.)

King v. Georgia Power Co. & Local 84, supra, upheld a motion to strike the Commission's conclusions on the grounds that the civil action is a trial *de novo* and not a review of an administrative decision. It is certainly correct that the civil action in District Court is a *de novo* proceeding because the administrative determination is made *ex parte*, with no right of cross-examination or other prerequisites of due process afforded the defendant. *King* reads § 2000e–5(a) to relate not to the investigation by the Commission and not to the Commission's findings of reasonable cause, but to the Commission's efforts at effecting a voluntary settlement through conciliation. It is to facts about the EEOC's conciliation endeavors that the statute speaks. The Court's reasoning in striking the Commission's conclusions from the pleadings seems to be that if these endeavors are inadmissible as evidence, their inclusion in the pleadings may be prejudicial, since the jury will see the pleadings in the jury room and receive the inadmissible evidence through the "back door". A close reading of the briefs in the *King* case indicates that the defendants there asked that Exhibit A be stricken. Exhibit A contained the actual decision of the Commission along with a summary of its investigation. Clearly this might be prejudicial if the jury were to see it.

However, in our case, the only matter mentioned in the complaint is the statement that the Commission found reasonable cause; that it would attempt conciliation; and that the 30-day letter was received on a certain date. Yet, it would seem that to get jurisdiction in a civil action, at the very least the 30-day letter would have to be pleaded and entered. In fact, the defendant in *King* asked that only the 30-day letter be pleaded in the complaint. Yet the 30-day letter itself mentions the failure of conciliation, although it does not expressly mention a finding of reasonable cause. The dilemma created by the need for the plaintiff to demonstrate jurisdiction but without prejudice to the defendant, is resolved by Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232, N.D.Ga., December 27, 1968. That case held that EEOC litigation was a nonjury, rather than a jury, matter. Therefore, any prejudice to the defendant by the jury is obviated. There is no reason to think that the court will be prejudiced, since it will know that the 30-day letter which must be pleaded signifies, among other things, that reasonable cause was found. Because of this consideration, no prejudice is possible and the defendant's motion to strike is denied.

▇▇▇ Seventh, the defendant asks the court to decline to entertain the declaratory judgment aspect of the plaintiff's suit under 28 U.S.C. § 2201, since all of the plaintiff's rights can be adjudicated in a normal civil action pursuant to Title VII of the Civil Rights Act.

Rule 57 of the Federal Rules of Civil Procedure, implementing the provisions of 28 U.S.C. § 2201, states that:

"The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C. § 2201, shall be in accordance with these rules, * * *. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. * * *"

The mere fact that the plaintiff is suing for injunctive and other relief in this suit does not bar this court from entertaining plaintiff's declaratory judgment motion. However, the notes of the Advisory Committee on Rules, with regard to Rule 57 of the Federal Rules, state that:

"A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general ordinary [*sic*] or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings."

The Supreme Court of the United States has reiterated this stricture. In Katzenbach v. McClung, 379 U.S. 294, 295, 85 S.Ct. 377, 379, 13 L.Ed.2d 290 (1964), which dealt with Title II of the Civil Rights Act of 1964, the Court states that:

"'* * * [E]ven though Rule 57 of the Federal Rules of Civil Procedure permits declaratory relief although another adequate remedy exists, it should not be granted where a special statutory proceeding has been provided. * * * Title II provides for such a statutory proceeding for the determination of rights and duties arising thereunder, §§ 204–207, and courts should, therefore, ordinarily refrain from exercising their jurisdiction in such cases."

If Title II of the Civil Rights Act provides such a special statutory proceeding, it is difficult to see how Title VII of the same Act can be treated differently. While procedures under each differ, both create special procedures and protect specially defined rights. While the Court in Katzenbach v. McClung, supra, did grant declaratory relief after stating the general bar against it, the Court made it clear that it did so only because of unique circumstances, not here present. 379 U.S. at 296, 85 S.Ct. 377. The court is aware that § 2000a–

**424**

6(b) under Title II states in relevant part that "the remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter." However, the language of the Supreme Court in *McClung* and the Notes of the Advisory Committee on the Federal Rules are stated much more broadly and are not dependent upon such a statutory provision.

The court has noted numerous cases involving questions of racial discrimination in which both declaratory and injunctive relief have been granted. See, *e. g.*, East Baton Rouge Parish School Board v. Davis, 287 F.2d 380 (5th Cir., 1961), cert. denied, 368 U.S. 831, 82 S. Ct. 54, 7 L.Ed.2d 34 (1961); Williams v. Kansas City, Mo., 104 F.Supp. 848 (W. D.Mo., 1952), aff'd, Kansas City, Mo. v. Williams, 205 F.2d 47 (8th Cir., 1953), cert. denied, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351 (1953); Willie v. Harris County, Texas, 202 F.Supp. 549 (S.D. Tex., 1962). But these cases were brought under general civil rights statutes such as 42 U.S.C. § 1983, which could not be considered as establishing a special statutory proceeding for purposes of Rule 57 and § 2201. Title VII on the other hand is a special statute designed to protect a special right. There is every reason to believe that the special right protected under Title VII will be safeguarded in an adjudication, such as the present one, under that very Title. The court's ruling should in no way limit either the rights of the plaintiff or those of the class she seeks to represent. Nor should it limit the scope of any holding against the defendant's alleged systematic discrimination against Negroes. Therefore, the court in its discretion will not *at this point* entertain the declaratory relief portion of the plaintiff's complaint. If it develops at the trial that the civil action under Title VII is inadequate in certain respects to protect the rights of the plaintiff and the class, or that declaratory relief is necessary to settle all issues between the parties, or such relief would serve a useful purpose, the court would not hesitate to consider declaratory relief. But at this moment, the court can see no reason why an adjudication under Title VII alone would fail to fully protect the parties.