**Robert J. HAWES and Margaret F. Hawes et al., Plaintiffs,**

**v.**

**C. E. COOK & COMPANY, a Michigan corporation, and C. Eugene Cook, Defendants.**

**No. G–228–73 C.A.**

United States District Court,
W. D. Michigan, S. D.

April 30, 1974.

---

Paul A. Ward and William P. Hodgkins, Jr., Grand Rapids, Mich., for plaintiffs.

Peter R. Tolley and Peter W. Steketee, Grand Rapids, Mich., for defendants.

## ORDER AND PRELIMINARY INJUNCTION

FOX, Chief Judge.

This is a securities case. The individual plaintiffs purchased one or more allegedly highly speculative securities

from the defendant C. E. Cook & Company, a Michigan corporation and brokerage firm. The plaintiffs, suing for themselves and others similarly situated,[1] allege that the defendant C. E. Cook & Company defrauded them in connection with the sale of these securities by means of various acts, practices, and omissions in violation of the Securities Act of 1933, as amended, Sec. 17(a), 15 U.S.C. Sec. 77q; the Securities Exchange Act of 1934, as amended, Sec. 10(b), 15 U.S.C. Sec. 78j(b); and Securities and Exchange Commission Rules 10b–3, 17 C.F.R. Sec. 240.10b–3, and 10b–5, 17 C.F.R. Sec. 240.10b–5.

At all times material to this action, defendant C. Eugene Cook was an officer, director and majority shareholder of C. E. Cook & Company, and defendant Cook controlled said Company within the meaning of the Securities Exchange Act of 1934, as amended, Sec. 20(a), 15 U.S.C. Sec. 78t(a). The plaintiffs allege that the defendant Cook willfully aided and abetted the alleged violations of the securities acts by the Company.

Attached to the Second Amended Complaint is a consent order entered on September 18, 1973, by the Michigan Department of Commerce, Corporation and Securities Bureau, revoking the registrations of C. E. Cook & Company as a securities broker-dealer and of C. Eugene Cook as a securities agent. Also attached to the Second Amended Complaint is an Order for Public Proceedings and Notice of Hearing entered on September 28, 1973, by the United States Securities and Exchange Commission, in which the Commission states that it had obtained information tending to show that C. E. Cook & Company and C. Eugene Cook engaged in numerous practices of questionable validity under the federal securities statutes and regulations.

The case is presently before the court on several motions and related matters.

These fall into three major categories. The first concerns the existence and use of the assets of C. E. Cook & Company and C. Eugene Cook and his wife since 1970. The second concerns the purchase, division, reconveyance, encumbrance, improvement, sale and disposition of the proceeds of sale of a 77-acre tract of land by Cook and his family. The third category relates to the place and manner of taking depositions. These will be considered seriatim.

I.

The plaintiffs have noticed the defendant C. Eugene Cook for a deposition and have requested Mr. Cook to produce all documents relating to the status, nature and location of funds of defendants C. E. Cook & Company and C. Eugene Cook on or about October 2, 1973 (the date this suit was filed). They have also requested documents relating to the application of such funds after October 2, 1973. In addition, the plaintiffs specifically request the production of C. E. Cook & Company's federal income tax returns for 1970 and subsequent years and the production of federal income and gift tax returns of C. Eugene Cook and his wife, Harriet J. Cook, for 1970 and subsequent years. The court assumes that Mr. Cook would be deposed on the subjects to which the requested documents relate, among other matters.

The defendants have moved the court for protective orders concerning the requested documents and the proposed deposition. The defendants contend that the scope of the proposed discovery is not within F.R.Civ.P. 26 in that most of the items requested do not relate to the subject matter of the pending action and are not likely to lead to the discovery of any admissible evidence. The defendants contend also that much of the information sought in the proposed discovery relates principally to the collectibility of the defendants, a matter

[1]. This suit has not yet been certified as a class action. In view of the large number of named individual plaintiffs, this does not affect the pending motions.

contended to be exclusively within the province of F.R.Civ.P. 69.

 Federal Rule of Civil Procedure 26(b)(1), on the scope of discovery, provides, in pertinent part:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of . .. . any other party . . . . It is not ground for objection that the information sought will be in-admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Plainly, the scope of discovery is broad, but not unlimited. The basic positive touchstone is relevance, including the reasonable possibility that the information sought would lead to admissible evidence. One fundamental limit is privilege.

Thus, the issue is whether the matters sought to be discovered are relevant to the subject matter of this suit.

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful for any person, "directly or indirectly," to use "in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of" Securities and Exchange Commission rules. Rule 10-b makes it unalwful for any person, "directly or indirectly . . . to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Since World War II, and especially in recent years, Section 10(b) and Rule 10b-5 have been liberally interpreted to reach a wide variety of corporate acts and practices which affect securities. In Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128, decided by the Supreme Court in 1971, there was not a fraud in the sale of the securities as such. Rather, corporate insiders had sold the securities from the corporation's holdings, and had misappropriated the proceeds to pay for their own purchase of all the corporation's stock. The corporation's Board of Directors was apparently deceived into authorizing the sale of securities by the misrepresentation that the proceeds would be exchanged for a certificate of deposit of equal value. The plaintiff in the case was the liquidator of the corporation. The ultimate beneficiaries of the suit were the corporate creditors.

In reversing the lower courts' dismissal of the case and holding that the plaintiff had stated a cause of action under Section 10(b), a unanimous Supreme Court stated:

"The Congress made clear that 'disregard of trust relationships by those whom the law should regard as fiduciaries, are all a single seamless web' along with manipulation, investor's ignorance, and the like. H.R.Rep.No. 1383, 73d Cong., 2d Sess., 6. Since practices 'constantly vary and where practices legitimate for some purposes may be turned to illegitimate and fraudulent means, broad discretionary powers' in the regulatory agency 'have been found practically essential.' Id., at 7. Hence we do not read § 10(b) as narrowly as the Court of Appeals; it is not 'limited to preserving the integrity of the securities markets' . . . ., though that purpose is included. Section 10(b) must be read flexibly, not technically and restrictively. Since there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under § 10(b), whatever might be available as a remedy under state law.

"We agree that Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement. But we read § 10(b) to mean that

Congress meant to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face. And the fact that creditors[8] of

8. The history of the Act shows that Congress was especially concerned with the impact of frauds on creditors of corporations. See H.R.Rep.No. 1383, 73d Cong., 2d Sess., 3–4."

the defrauded corporate buyer or seller of securities may be the ultimate victims does not warrant disregard of the corporate entity. The controlling stockholder owes the corporation a fiduciary obligation—one 'designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders.' Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281.

Bankers Life, supra, 404 U.S. at 11–12, & n. 8, 92 S.Ct. at 168.

The present case is not on all fours with Bankers Life, but the court believes that the matters presently before it are controlled by the general principles enunciated there by the Supreme Court.

■ The plaintiffs have made very substantial allegations that the defendants committed a variety of prohibited acts, including failures to disclose pertinent information, in connection with the sale of certain securities. In addition, the defendants have stated on the record that approximately $10,000 of corporate funds of C. E. Cook & Company were used to construct a tennis court at the Cooks' residence. (Transcript, Motions, April 10, 1974, at 4.) Mr. Cook has very recently moved himself and all his assets (except those currently under control of this court) to Arizona. These facts are sufficient to at least call into question the corporate and individual practices of the defendants. This is simply *not* a case in which the plaintiff has filed a lean complaint and then sought to use discovery to find something substantial to support his claims.

The court believes it is arguable that disclosure to investors that corporate funds were being used to construct a tennis court might have dissuaded the average prudent investory from dealing with the defendants at all. If there were other questionable practices, full disclosure of them might likewise have had a dissuasive effect.

■ More important, C. Eugene Cook, as officer, director, and majority and controlling shareholder of the brokerage firm, had and continues to have a fiduciary obligation to the corporation and to the corporate creditors, a fiduciary obligation which is legally recognized by Sec. 10(b) when it factually touches or affects, directly or indirectly, securities transactions. In order to be fully effective, the securities laws must reach corporate and individual actions performed after the actual sale of securities, when there is established a continuous and connected pattern of performance. If a corporate officer and holder of a controlling interest can abuse his fiduciary obligations and successfully hide his abuses from bona fide claimants and the courts, then the remedial and regulatory purposes of the federal securities laws will be severely frustrated.

Whether there were additional connected questionable or illegal practices by the defendants before or after the sale of the securities involved here, the court does not know. At this time, only the defendants possess the relevant documents and information. In light of the broad reach of the securities laws, the defendants cannot be heard at this point to say that all or any significant part of the information sought to be discovered is irrelevant to the case in chief. Cf., Flowers v. Sneath Glass Co., 190 F.Supp. 665, 666 (N.D.Ind.1961).

The court concludes that the information and documents sought to be discovered by the plaintiffs in this case relate to the subject matter of the pending action, and are, under the circumstances,

reasonably calculated to lead to the discovery of admissible evidence. The court knows of no general privilege which would protect the information.

Rule 1 of the Federal Rules contains the mandate for administration of proceedings in federal court:

"These rules * * * shall be construed to secure the just, speedy, and inexpensive determination of every action."

A similar mandate is contained in the Proposed Rules of Evidence:

"Rule 102. Purpose and Construction.

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

"There is probably no provision in the federal rules that is more important than this mandate. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted. The primary purpose of procedural rules is to promote the ends of justice * * *. The mandate in the second sentence of Rule 1 is only one of a number of similar admonitions to the bench and bar scattered throughout the rules directing that the rules be interpreted liberally in order that the *procedural framework in which litigation is conducted promotes the ends of justice and facil-*

*itates decisions on the merits * * *.*" 4 Wright and Miller, Federal Practice and Procedure, Civil § 1029. (Emphasis supplied.)

It is not inconsequential that in this case there is a substantial public, as well as private, interest in a just determination based solely on the merits of the case.

Rule 1 therefore requires that rules of procedure are to be applied in a fashion that will promote the ends of justice. Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); Leedom v. Int'l. Bhd. of Elec. Wkrs., 107 U.S.App.D.C. 357, 278 F.2d 237, 244 (1960), Padovani v. Bruchhausen, 293 F.2d 546 (2nd Cir. 1961). The force of this first and greatest of the federal rules is felt in all of the remaining rules, and the spirit with which they have been applied by the federal courts for more than thirty years confirms this impression.

The emphasis Rule 83 places on an ad hoc determination of procedural issues is also designed to promote the ends of justice. It is a reminder to courts that difficult procedural issues must not be avoided through an overabundance of general rules, but instead must be resolved on a case-by-case basis and according to the particular facts at hand.[2] The emphasis on ad hoc consideration also demands that the courts apply principles of equity and fairness to the resolution of specific procedural questions.[3]

---

2. See Rule 83 and the Local Federal Rules, 67 Columbia L.R. 1251 (1967).

3. In a seminar given in 1962 for newly appointed district judges by the Committee on Pretrial Procedure of the Judicial Conference of the United States, Second Circuit Judge Irving R. Kaufman, in discussing the topic of discovery, stated that "[w]hen a case is thus brought before a judge there are numerous alternatives open to him. *In essence, he functions as a Chancellor, dispensing relief in accordance with principles of equity and fair play, within the confines of the appropriate rules.*" (Emphasis supplied.) Proceedings of the Seminars for Newly Appointed District Judges, 1963.

Similarly, Edgar Toland, Secretary to the Advisory Committee on the Federal Rules, cautioned as early as 1938:

"The purpose of the rules is to put an end to that sort of thing [namely, the complicated system of the past with its extensive and detailed provisions]. *Let justice be administered according to justice and common sense, not according to the neces-*

Rules 1 and 83 thus emphasize two important factors. First, that matters encompassed by the federal rules are to be administered, first and foremost, with the ends of justice in mind, and second, that under these rules the courts are vested with considerable discretion to regulate the proceedings before them in a manner consistent with equity and fairness.[4] This reservoir of a trial court's discretionary authority under Rule 26(c) should readily be available to prevent or correct any unjust or unfair effect of a pretrial protective order that has been issued early in the proceedings whenever such an effect becomes apparent during the course of the trial.

Federal courts are thus duty bound to use their discretion, through the federal rules, as a balancing factor whenever justice and fairness so demand.

One element that may be considered in such a calculation is the impact of a disparity in resources.

It is true that the proposed discovery in this case will also entail the discovery of assets, and to that extent will impinge upon matters discoverable under Rule 69. However, Rule 69 is not an air-tight compartment, and it cannot be used to shield from view matters otherwise discoverable under Rule 26. Rule 69 is simply irrelevant to any issue presently before this court.

## II.

The second category of matters before the court concerns an originally unimproved tract of about 77 acres of land which C. Eugene Cook purchased by a land contract dated October 30, 1970. On June 28, 1971, the sellers finally conveyed the land to C. Eugene Cook by warranty deed, which was recorded on July 1, 1971. In the meantime, the Cooks had constructed a dwelling on the property. On June 30, 1971, C. Eugene Cook and his wife, Harriet J. Cook, by quit-claim deed, conveyed 20 acres surrounding the dwelling to themselves as tenants by the entirety. The deed was recorded on August 13, 1971.

On July 1, 1971, C. Eugene and Harriet J. Cook gave a mortgage on the 57 unimproved acres not held as tenants by the entirety to Betty J. Cook, the mother of C. Eugene, and also gave a mortgage note for $156,000. The mortgage was not recorded until October 5, 1973, and after the filing of this lawsuit. Meanwhile, on October 11, 1971, there was executed a trust agreement between Betty J. Cook as Settlor and Charles E. Cook, Sr., as Trustee, and the mortgage and mortgage note were assigned to the Trustee.

On the motion of the plaintiffs, the court previously issued a writ of attachment as to the unimproved 57 acres held exclusively by C. Eugene Cook. With the agreement of the parties, this parcel was subsequently sold, and the proceeds paid into court. At that time, the court did not issue an attachment as to the 20 acres held by tenancy in the entirety, but the plaintiffs have brought in new evidence and asked the court to reconsider the matter.

*sity of complying with empty forms and ancient rituals.*" (Emphasis supplied.)
Proceedings of Institute at Washington, D. C., October 6, 7, 8, 1938, and of the Symposium at New York City, October 17, 18, 19, 1938, edited by Edward H. Hammond (American Bar Association, 1939), page 128.

4. Wright and Miller, Federal Practice and Procedure, state in Civil § 1029, that it "is not an exaggeration to say that the keystone to the effective functioning of the federal rules is discretion of the trial court. The rules grant considerable power to the judge and only provide general guidelines as to the manner in which it should be exercised * * *. The rules will remain a workable system only as long as trial court judges exercise their discretion intelligently on a case by case basis; *application of arbitrary rules of law to particular situations only will have a debilitating effect on the overall system.*" (Emphasis supplied.)

## A.

■ The plaintiffs have noticed C. Eugene Cook for a deposition and requested Mr. Cook to produce all documents concerning the various conveyances of the Cook residential property and the creation and assignment of the mortgage. The plaintiffs have also subpoenaed Betty J. Cook, the original mortgagee of the 57 acres, for a deposition and have subpoenaed all documents in her possession or control relating to the creation and assignment of the mortgage.

The defendant C. Eugene Cook has moved the court for a protective order, contending that the requested documents and proposed discovery exceed the scope of discovery allowed by Rule 26(c).

Betty J. Cook, who is not a party to this case, by her attorneys has moved the court to quash the subpoenas for deposition and for the production of documents because, she argues, the subpoenas are unreasonable and oppressive and suggest inquiry into matters that are personal, confidential, and of no relevance to the issues pending in this cause, and also because the documents related to the mortgage and trust have already been made available to the plaintiffs' counsel.

The court believes that what it has previously said concerning the plaintiffs' broader discovery efforts applies also to information about the various transactions concerning the 77 acres of land. It is admitted that approximately $10,000 of Company funds were used to improve the Cooks' residence, but it is not known whether this is the only questionable matter which touched both the securities transactions and the land. Corporate officers and holders of a controlling interest cannot use regular commercial transactions and normally innocent family property and estate planning devices to completely shield some aspects of their activities from bona fide plaintiffs and the courts. The corporate $10,000 to improve the Cooks' residence is at the very least a misappropriation of corporate funds in violation of Cook's fiduciary duty. Further, discovery may reveal whether this is a small iceberg or just the tip of an iceberg.

Furthermore, while the scope of discovery is a matter of federal procedural law, this court notes that the Michigan Supreme Court has stated it to be a "general rule that transactions between members of a family must be closely scrutinized when the rights of creditors are involved." Bentley v. Caille, 289 Mich. 74, 286 N.W. 163 (1939).

Accordingly, the plaintiffs may inquire as to the sources of funds and other matters concerning the various transactions summarized above involving the Cook's land and dwelling.

## B.

On March 25, 1974, the plaintiffs moved this court for a "Preliminary Injunction in Lieu of Attachment" which would enjoin the defendant C. Eugene Cook and those in concert with him to pay the proceeds of sale of the 20-acre residential property held by tenancy by the entirety into this court. The property has now been sold and the proceeds are being held subject to the order of this court.

The plaintiffs contend that the requirements for a writ of attachment under Michigan law are met, and that the requirements for the requested injunction are also met. The plaintiffs allege that they will suffer irreparable harm if they are not allowed the state's prejudgment remedies. If the funds in question are allowed to leave the forum state, the plaintiffs argue, then the funds might be dissipated or placed in the jurisdiction of a foreign country. This would hamper the collection of any judgment the plaintiffs might receive. Even if the funds remained in another state, the plaintiffs, if they received a judgment, would be forced to utilize the cumbersome process for collecting foreign judgments and would be controlled in this

way by the law of the state of the funds' situs. In addition, the plaintiffs argue that a tenancy by the entirety does not attach to the proceeds of the sale of real property held by such tenancy. If a tenancy by the entirety attaches to the proceeds, the plaintiffs further argue, there has been a sufficient showing of fraud to date to enable the court to issue the requested injunction.

The defendant C. Eugene Cook opposes the motion for an injunction in lieu of attachment on the grounds that creditors of C. Eugene Cook alone can reach neither the real property held by Mr. and Mrs. Cook as tenants by the entirety nor the segregated and identifiable proceeds of the sale of such real property, except on a showing of a fraud on creditors in the creation of the tenancy. The defendant further contends that there has been no showing of fraud on creditors as to the creation of the tenancy or as to the proceeds in question.

■ The court finds that the relevant jurisdictional and other procedural requirements for the issuance of a writ of attachment under Michigan law have been met.[5] F.R.Civ.P. 64; M.C.L.A. Sec. 600.4001(6); Mich.1973 GCR 735.1 et seq. The defendant C. Eugene Cook is not presently a resident of Michigan and has not resided in Michigan for more than three months. The present action sounds in tort, and appropriate affidavits have been filed. A bond can be required. A hearing on the plaintiffs' motion has been held.

The defendant Cook, however, advances the Michigan rules of property which, he argues, impose a tenancy by the entirety on the proceeds of the sale of the Cooks' residence, and place these proceeds beyond the reach of Mr. Cook's creditors.

■ The court agrees that, under the special circumstances of this case, a tenancy by the entirety has attached to the proceeds of the sale of the Cooks' residence. See Muskegon Lumber & Fuel Co. v. Johnson, 338 Mich. 655, 62 N.W.2d 619 (1954); Kahn, "Joint Tenancies and Tenancies by the Entirety in Michigan—Federal Gift Tax Considerations," 66 Mich.L.Rev. 431, 443 (1966). If segregated and identifiable proceeds of a sale of entireties real property were automatically subject to attachment whenever the sale of the property took place after a suit has been commenced against one's spouse, then the tenancy by the entirety would operate as an inhibition of the alienation of real property in a large number of cases. Almost no one would benefit if defendants were thus led to retain land they neither wanted nor needed.

■ But a tenancy by the entirety is not invulnerable to attack in Michigan. Conveyances may be ignored or set aside on a wide variety of grounds. In Bentley, supra, 286 N.W. at 164, the Michigan Supreme Court said:

"Aside from the exemptions allowed by law, all property of a debtor is subject to the claims of creditors, and those claims cannot be defeated by a conveyance which secures to the grantor the future fruits of the property." Detroit & Security Trust Co. v. Gitre, 254 Mich. 66, 74, 235 N.W. 884, 887, and authorities therein cited. See also 27 C.J. p. 602, citing Wisner v. Farnham, 2 Mich. 472.

In Walker v. Cady, 106 Mich. 21, 63 N.W. 1005, a conveyance in consideration of an annuity was held to be void although actual intent to defraud was not established. The court, in Berry v. Haas, 12 Ohio Cir.Ct.R. 189, held

5. As noted, the court previously issued a writ of attachment as to 57 acres formerly held by Mr. Cook alone. At that time, the court examined the matter closely and determined that the requirements for a writ of attachment under F.R.Civ.P. 64 and Michigan law were met in this case with regard to the land in question. Except for the existence of the tenancy by the entirety, discussed infra, the issues raised by the present motion are no different from those previously raised.

that the reservation of a life estate constituted constructive fraud.

 In this case, there has been a showing of some questionable actions on the part of the defendant Cook with respect to the land in question, but, again, the court does not yet know much about them, or whether there were additional questionable actions. The defendant has demanded that the plaintiffs make a full showing of traditional fraud, but then he has consistently resisted every effort on the part of the plaintiffs to discover pertinent matters relating to transactions concerning the property. While the mere filing of a complaint and a preliminary showing of questionable practices will not suffice to immediately and totally set aside a rule of property, still, the court concludes that the Michigan law, conditioned as it is by the general rule that transactions between family members must be closely scrutinized when the rights of creditors are involved, combines with the Federal Rules of Civil Procedure to allow discovery and further argument before the court makes a final decision as to whether all or any part of the proceeds will remain impressed with the tenancy by the entirety.

The policy of the federal securities laws complements the Michigan law and is of surpassing importance. In J. I. Case Co. v. Borak, 377 U.S. 426, 433–434, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423, the Supreme Court spoke in expansive terms of the federal courts' power and duty to fashion appropriate remedies to effectuate the purposes of Congress under the Securities Exchange Act of 1934:

> We, therefore believe that under the circumstances here it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose. As was said in Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942):

> "When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted."

See also Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944); Deitrick v. Greaney, 309 U.S. 190, 201, 60 S.Ct. 480, 485, 84 L.Ed. 694 (1940). It is for the federal courts "to adjust their remedies so as to grant the necessary relief" where federally secured rights are invaded. "And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). Section 27 grants the District Courts jurisdiction "of all suits in equity and actions at law brought to enforce any liability or duty created by this title . . . ." In passing on almost identical language found in the Securities Act of 1933, the Court found the words entirely sufficient to fashion a remedy to rescind a fraudulent sale, secure restitution and even to enforce the right to restitution against a third party holding assets of the vendor. Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). This significant language was used:

> "The power *to enforce* implies the power to make effective the right of recovery afforded by the Act. And the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of

the particular case." At 288 of 311 U.S., at 233 of 61 S.Ct.

The enforcement of the federal securities acts is hindered to the extent that defendants may utilize general rules of property as a cover for the removal of their assets from the control of the court even though there may be facts which, if known, would render all or part of the assets attachable at the prejudgment stage and subject to levy and execution on a final judgment. To the extent that the hindrance is successful, individual investors are inhibited or deterred from bringing actions against alleged or actual wrongdoers, to the great frustration of both the remedial and regulatory purposes of Congress.

In this case, the defendant C. E. Cook and Company has ceased doing business, and the defendant C. Eugene Cook has moved all the company's records and all his assets to Arizona. The plaintiffs are desperately afraid that if the proceeds of the sale of the Cooks' residence leave Michigan, they will be dissipated, hidden, or removed from the country. At the very least, the plaintiffs, should they receive a judgment on the merits, would be placed to the trouble and expense of trying to collect in Arizona. The court cannot say that the plaintiffs' fears are unreasonable.

The court thus concludes that it has the power under the securities laws and that it ought in this case to prevent the removal of the proceeds of the sale of the Cooks' residence from the immediate control of the court until the plaintiffs have had an opportunity to fully discover the facts concerning the property and to present these facts to the court through depositions and documentary exhibits.

In deference to the supremacy of the federal law in the area of securities regulation, the court has chosen to denominate its order a preliminary injunction. Authority to issue such an injunction is found in Sec. 27 of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78aa, as interpreted by the Supreme Court in light of the purposes of Congress in Borak, supra. F.R.Civ.P. 65 does not restrict the authority of the court to issue this preliminary injunction, or by its terms require the moving party to make any particular showing to support a motion for such an injunction. Under the special circumstances of this case, the court concludes that the plaintiffs have made a sufficient showing to support the issuance of the requested injunction, the more especially since it is by its terms subject to later modification or dissolution.[6]

After the parties have presented all the facts and legal arguments concerning the property in question, the court will be in a position to give a fully informed consideration to the federal securities laws and the Michigan rules of property in light of this particular case. The court will be able to determine with precision whether any part, or all, or none of the proceeds of the sale of the Cooks' residential property ought to be attached until a final decision on the merits.

In the meantime, the court urges the parties to agree upon a placing of the proceeds at interest.

### III.

The plaintiffs have noticed the defendant C. Eugene Cook for a deposition in Grand Rapids, Michigan, and have requested him to produce documents at that place. Mr. Cook has moved his residence to Arizona and taken his documents with him, and asserts that he ought not to be forced to return to Grand Rapids for a lengthy deposition.

---

**6.** It seems to the court to make no difference whether the order of the court is characterized as a temporary writ of attachment subject to a later motion to quash or a preliminary injunction subject to a later motion for dissolution. In either case, the court believes its action to be consonant with sound federal policy and with the state and federal rules concerning the availability of prejudgment remedies.

In the exercise of its discretion over discovery matters, the court will allow the deposition and production of documents to take place in Arizona, but this allowance is subject to the foregoing condition. Since this is a very complicated case, the court does not believe that further discovery problems ought to be taken into the Arizona federal district courts. Therefore, both parties will be enjoined to bring further motions relating to discovery in this case before this court, and not before any of the Arizona federal courts. The parties may use the telephone conference calls to this court as necessary.[7]

The plaintiffs have also moved the court for an order directing Mr. Cook's deposition to be taken before a United States Magistrate.

The court does not believe that it is necessary or desirable to trouble an Arizona Magistrate for the purposes of a deposition. Certainly this is not the usual practice. The defendant C. Eugene Cook is directed to answer all questions put to him by the plaintiffs concerning the requested documents and the transactions surveyed in this order and opinion. The defendant may put any and all objections on the record, and the court will give full consideration to each such objection when the deposition is submitted to it for consideration.

## IV.

It is therefore ordered, as follows:

1. The plantiffs' Notice of Deposition Including Request for Production of Documents and Tangible Things at the Taking of the Deposition served on defendant C. Eugene Cook on March 27, 1974, and directing said defendant to appear in Grand Rapids, Michigan, is hereby vacated so far as the designated time and place. The plaintiffs are hereby given leave to issue a new notice for a future date in Arizona.

2. The plaintiffs and defendants are hereby enjoined to move for any further orders concerning discovery in this case only in this court, and not in any of the United States District Courts for Arizona. This may be done by conference calls, if necessary.

3. The defendants' Motion for Protective Orders is hereby denied, and the defendants are hereby directed to comply with the plaintiffs' Request for Production of Documents and Tangible Things at the Taking of the Deposition in Arizona. The defendants are further directed to answer all questions put to them by the plaintiffs concerning matters surrounding the requested documents, including but not limited to transactions discussed in the text of this opinion and order. This direction shall not be construed to limit in any way the defendants' right to put objections to questions on the record.

4. The plaintiffs' Motion for an Order that a U.S. Magistrate Preside at the Taking of Depositions and for an Order Providing for the Handling of Documents in Connection Therewith is hereby denied.

5. Betty J. Cook's Motion to Quash Subpoenas for deposition and for production of certain documents is hereby denied, except insofar as relates to the time and place of said deposition and production of documents. Said deposition and production shall take place before this court at a date and time to be set by the court in consultation with the parties and Mrs. Cook.

6. The plaintiffs' Motion for a Preliminary Injunction in Lieu of Attachment is hereby granted, and the defendants are hereby enjoined to pay the proceeds of the sale of the land described in the said Motion into this court, subject, however, to the following qualifications:

A. With the leave of the court, the parties may agree to and the defendants

---

7. When the deposition is taken in Arizona, the Arizona district court will have the jurisdiction to hear discovery motions, but in light of this court's discretionary control over discovery matters, this court does not believe that any party will have a jurisdictional right to go into the Arizona courts. F.R.Civ.P. 37(a) ; 26(c).

may place the funds at interest in a safe manner approved by this court in the Western District of Michigan.

B. The continued existence of this preliminary injunction is conditioned upon the plaintiffs diligence in discovering the relevant matters concerning the aforesaid land, and the bringing of the information before the court through deposition and/or documentary exhibits as soon as practicable. The plaintiffs are directed to give priority to this matter in their discovery, and they shall not await the completion of all discovery on their case in chief before bringing the matter before the court. The defendants may raise the issue of the lack of plaintiffs' diligence by motion to dissolve the preliminary injunction after the plaintiffs have had a full opportunity to discover relevant matter.

C. The plaintiffs shall post a bond of $1,500.