Calvin McCLAIN

v.

MACK TRUCKS, INC. et al.

Civ. A. No. 78–382.

United States District Court,
E. D. Pennsylvania.

Dec. 12, 1979.

Charles W. Bowser, William H. Bishop, Philadelphia, Pa., for plaintiff.

Carter R. Buller, J. A. Boxer, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

A manufacturer and distributor of heavy duty trucks, defendant Mack Trucks, Inc. (Mack) conducts business throughout the United States and in over seventy-five countries around the world. Mack maintains four American manufacturing and assembly plants, located in Hayward, California, Hagerstown, Maryland, Macungie and Allentown, Pennsylvania, where plaintiff obtained employment June 2, 1972. During the following seven months plaintiff was absent from work 37 days. During the 1973 calendar year plaintiff was absent from work 83 days. Mack notified him that such frequent absences would be unsatisfactory and that in the future medical excuses documenting his sickness would be required. Mack also requested plaintiff to provide personal medical records, but plaintiff refused to authorize release. When plaintiff's absenteeism record failed to improve, Mack gave him a series of verbal reprimands; on February 1, 1974, for absence the prior day and failure to provide a satisfactory excuse, on March 12, 1974, for failing to report properly a series of absences from February 25 to March 8, and on April 2, 1974, for absence the prior day and failure to provide a satisfactory excuse therefor. By April 18, 1974, plaintiff had already been absent 41 work days in that calendar year, including ten days within the prior two-week period for illness, personal business and unexplained reasons. Accordingly, on April 18, 1974, Mack imposed a three-day disciplinary suspension. Plaintiff's absences continued and on May 3, 1974, Mack imposed a two-week disciplinary suspension. Nonetheless, plaintiff's absences continued and during 1974 he was absent a total of 173 work days. During the first three and one-half months of 1975 plaintiff was absent 54 work days. On April 16, 1975, Mack imposed a six-week disciplinary suspension for excessive absenteeism and warned plaintiff that if he failed to improve his attendance record he would be discharged. Irrespective of absences due to suspension, plaintiff missed 62 work days during the 1975 calendar year.

On December 22, 1975, Mack transferred plaintiff to its Macungie manufacturing and assembly facility. After a holiday shut-down, plaintiff was laid off on January 7, 1976, and recalled April 23, 1976. Of his first eight workdays plaintiff appeared only four times. Thereafter Mack imposed a 44-day disciplinary suspension for excessive absenteeism and failure to report absences. Once again Mack warned plaintiff that if his attendance record did not improve he would be terminated. Following this fourth suspension plaintiff returned to work at the Allentown facility. Although officials from the defendant union and Mack spoke to plaintiff concerning his excessive absenteeism following his return to Allentown, plaintiff's poor record continued. During the final six months of 1976 plaintiff was absent, tardy or left work early a total of 37 times. During the first six weeks of 1977 plaintiff was absent, tardy or left work early seventeen times. Consequently, Mack terminated plaintiff's employment February 21, 1977, for poor attendance. The union took plaintiff's discharge to arbitration, but the award, dated

May 5, 1978, concluded that discharge had been for just cause.[1]

To vindicate his rights under the First, Thirteenth and Fourteenth Amendments and the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, plaintiff instituted this action in February 1978 against Mack and the United Auto Workers and Local 677 thereof. Plaintiff alleged that Mack retaliated against him for civil rights charges and actions which he filed against Mack and for his part in assisting other Mack employees in filing charges with the Pennsylvania Human Relations Commission. By discriminatory enforcement of company rules regarding medical excuses for absences and release of medical information to the company physician, disciplinary suspensions and involuntary termination of his employment Mack allegedly discriminated against plaintiff on account of his race. Plaintiff also accused Mack of discriminating against "members of the employee class on the basis of race" with respect to recruitment, hiring, seniority, discipline, discharge, employment opportunities and use of "unvalidated" educational and testing requirements. Against the unions plaintiff alleged that they failed to represent him adequately or fairly and that they engaged in conduct and practices discriminating against blacks because of their race in violation of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Plaintiff sought compensatory and punitive damages, declaratory and injunction relief, reinstatement and attorney's fees.

Mack filed a motion to dismiss, which the Court granted as to Count One and all claims under 42 U.S.C. § 1983[2]. The Court also denied plaintiff's motion for class action certification[3]. *McClain v. Mack Trucks Inc.*, 81 F.R.D. 730 (E.D.Pa.1979). *See also Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners*, 83 F.R.D. 474 (E.D.Pa.1979), *Martinez v. Bethlehem Steel Corp.*, 78 F.R.D. 125 (E.D.Pa.1978), *Hauck v. Xerox Corp.*, 78 F.R.D. 375 (E.D.Pa.1978) and *Martin v. Easton Publishing Co.*, 73 F.R.D. 678 (E.D.Pa.1977). Shortly thereafter plaintiff filed requests for production of documents and interrogatories to Mack, which made timely objection to these discovery requests. Plaintiff then moved to compel answers and responses thereto. By order dated August 29, 1979, the magistrate directed counsel to confer and resolve their differences. By agreeing to limit the scope of discovery to the period from 1974 to 1977, the Allentown facility, its bargaining unit shop employees and to discharges and disciplinary actions for excessive absenteeism, the parties worked out most of the dispute. However, disagreement over one request for production of documents and ten interrogatories continued. By order dated October 4, 1979, the magistrate required Mack to provide in full all information and documents which plaintiff requested. Mack now appeals and seeks a more carefully tailored discovery order. Generally, Mack argues that the magistrate's order is unreasonably broad with respect to time, geography, job classifications and employment practices. The requested discovery, urges Mack, seeks irrelevant information and documents not reasonably calculated to lead to discovery of admissible evidence and requires production of opinions and conclusions. Plaintiff contends that he drew each request and interrogatory carefully to obtain information es-

---

1. Plaintiff contends that the collective bargaining agreement sanctioned his absences occurring between July 1976 and February 1977 consisting of five days for vacation, three days for recuperation from an automobile accident, two days for hunting, one day for a court appearance, two days for a funeral and seven days for recuperation from a periodic liver ailment. Plaintiff also avers that his health caused him to miss work in early 1973. *See* Plaintiff's Complaint, ¶ 31, and Brief at 2.

2. Essentially, plaintiff's remaining allegation is that racial animus motivated Mack's disciplinary measures and termination of plaintiff's employment.

3. *See Cutner v. Atlantic Richfield Co.*, 10 FEP 743 (E.D.Pa.1977) (the need for discovery in an individual action not as broad as in a class action).

tablishing Mack's discriminatory attitudes toward him and other minorities.

Defining the scope of discovery, Fed.R.Civ.P. 26(b)(1) provides, in pertinent part, that

[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of . . . any other party . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Relevancy, and to a lesser extent burdensomeness, constitute the principal inquiry in ruling upon objections to interrogatories. *Superior Coal Co. v. Ruhrkohle, A. G.*, 83 F.R.D. 414, 422 (E.D.Pa.1979); *In re United States Financial Securities Litigation*, 74 F.R.D. 497, 498 (S.D.Cal.1975); *Greene v. Raymond*, 41 F.R.D. 11, 14 (D.Colo.1966); *Lumbermen's Mutual Casualty Co. v. Pistorino & Co.*, 28 F.R.D. 1, 2 (D.Mass.1961). In the interests of fair trial, eliminating surprise and achieving justice, *United States v. Purdome*, 30 F.R.D. 338, 340 (W.D.Mo.1962); *Stonybrook Tenants Association, Inc. v. Alpert*, 29 F.R.D. 165, 168 (D.Conn.1961), relevancy, construed liberally, creates a broad vista for discovery, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Schlagenhauf v. Holder*, 379 U.S. 104, 121, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Dollar v. Long Manufacturing, N. C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *Eastland v. Tennessee Valley Authority*, 553 F.2d 364, 370 (5th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); *Spier v. Home Insurance Co.*, 404 F.2d 896, 899 (7th Cir. 1968); *Edgar v. Finley*, 312 F.2d 533, 535 (8th Cir. 1963); *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 56 (9th Cir. 1961); *Bowman v. General Motors Corp.*, 64 F.R.D. 62, 69 (E.D. Pa.1974); *Morgan Smith Automotive Products, Inc. v. General Motors Corp.*, 54 F.R.D. 19, 20 (E.D.Pa.1971); *Frey v. Chrysler Corp.*, 41 F.R.D. 174, 176 (W.D.Pa.1966), and makes trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent". *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986–987, 2 L.Ed.2d 1077 (1958). *See also Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery*, 48 F.R.D. 487, 498 (1970) (relevancy is to be accorded "flexible treatment").

However, the scope of discovery is not without limits, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 351–52, 98 S.Ct. 2380; *Hickman v. Taylor*, 329 U.S. at 507–08, 67 S.Ct. 385; *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 139 (W.D.Okl.1977); *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 563 (N.D.Ill.1976); *Corbett v. Free Press Association*, 50 F.R.D. 179, 181 (D.Vt. 1970); *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C.1969); *Greene v. Raymond*, 41 F.R.D. at 13; *Flickinger v. Aetna Casualty & Surety Co.*, 37 F.R.D. 533, 534 (W.D.Pa.1965), and is committed to the sound discretion of the trial court. *Dollar v. Long Manufacturing N. C., Inc.*, 561 F.2d at 618; *Bowman v. General Motors Corp.*, 64 F.R.D. at 71; *Corbett v. Free Press Association*, 50 F.R.D. at 181; *Essex Wire Corp. v. Eastern Electrical Sales Co.*, 48 F.R.D. 308, 310 (E.D.Pa.1969). The party seeking discovery has the burden of showing clearly that the information sought is relevant to the subject matter of the action and would lead to admissible evidence. *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *Pierson v. United States*, 428 F.Supp. 384, 390 (D.Del.1977), unless the information is privileged, in which event it is not discoverable. *Equal Employment Opportunity Commission v. Otto*, 75 F.R.D. 624, 626 (D.Md.1976); *Hawes v. C. E. Cook & Co.*, 64 F.R.D. 22, 26 (W.D.Mich.1974), *vacated and remanded*, 538 F.2d 329 (6th Cir. 1976); *Essex Wire Corp. v. Eastern Electrical Sales Co.*, 48 F.R.D. at 310, Fed.R.Civ.P. 26(b)(1).

Plaintiff's Request for Production of Documents Number 5 seeks "[c]opies of any affirmative action plan in existence from the year 1972 to 1977". Similarly, in the interrogatories plaintiff requests Mack to

> ▮ State whether Mack Truck, Inc. has an Affirmative Action Plan or agreement with the Commonwealth of Pennsylvania. If so, attach a copy of such plan or plans to the Answers to these Interrogatories.

The magistrate ordered Mack to inform plaintiff whether it had an affirmative action plan or agreement with the Commonwealth and if so to provide a copy thereof.

▮ Generally, affirmative action plans are not discoverable in racial discrimination employment cases on the ground that the plans are not relevant to the subject matter of the suit or constitute confidential, privileged information. *Johnson v. Southern Railway Co.*, 19 EPD ¶ 9076, 6645 (N.D.Ga. 1977); *Parker v. Kroger Co.*, 19 EPD ¶ 8995, 6165 (N.D.Ga.1977). For example, in *Banks v. Lockheed-Georgia Co.*, 53 F.R.D. 283, 285 (N.D.Ga.1971), a class action racial discrimination suit, the court denied plaintiffs access to affirmative action plans by reasoning that these

> reports have been made in an attempt to affirmatively strengthen the Company's policy of compliance with Title VII and Executive Order 11246. The Court looks on this as an important issue of public policy and feels it would be contrary to that policy to discourage frank self-criticism and evaluation in the development of affirmative action programs of this kind.

Similarly, *Sanday v. Carnegie-Mellon University*, 11 EPD ¶ 10,659, 6976 (W.D.Pa. 1976) also refused to require disclosure "in view of the governmental requirements which foster candid reflection and internal evaluation", for revelation thereof might destroy the "primary purpose behind such regulation". In *Dickerson v. United States Steel Corp.*, 12 EPD ¶ 11,095, 5071 (E.D.Pa. 1976), the court ruled that although defendant had not

adequately demonstrated that disclosure would discourage voluntary compliance . . . public policy against disclosure outweigh[ed] the plaintiffs' need for these materials. Even though affirmative action plans are required for all government contractors, the quality of these documents depends to a great extent on the good faith of employers in evaluating their progress and establishing affirmative action goals. If these materials are subject to discovery and can be used by plaintiffs in Title VII suits, employers will not make candid evaluations and will attempt to set goals at minimum levels. Since the government cannot review in detail the massive amount of documents received under the affirmative action program, a decrease in voluntary cooperation could seriously impair the equal employment opportunity policy.

*See also Miller v. Doctor's General Hospital*, 76 F.R.D. at 138–39 (plaintiff's interrogatories seeking information concerning other complaints filed against defendant with the federal or state government denied as irrelevant), *Stevenson v. General Electric Co.*, 18 FEP 746, 747 (S.D.Ohio 1978) (interrogatories in Title VII action seeking affirmative action plans denied), *Johnson v. Southern Railway Co.*, 19 EPD ¶ 9076 at 6645 (interrogatories in Title VII action seeking affirmative action plans denied as "inconsistent with the policy of obtaining voluntary compliance with the law through self-criticism and evaluation"), *Parker v. Kroger*, 19 EPD at 6165 (request for production of affirmative action plan denied in Title VII action), *Wood v. McCullough*, 45 F.R.D. 41, 43 (S.D.N.Y.1968) (interrogatories in medical malpractice action seeking information concerning other legal proceedings instituted by or against them denied as irrelevant). Insofar as the magistrate directed defendant to produce affirmative action plans or agreements in Request for Production of Documents Number 5 and Interrogatory Number 10 the order is reversed and plaintiff's motion to compel answers thereto is denied.

▮ In three other interrogatories plaintiff desired information concerning Mack's

equal employment opportunity programs and policy. Plaintiff asked Mack to

■ State whether Mack Truck, Inc. has instituted an Equal Employment Opportunity Program. If so, describe such program in detail.

■ State whether Mack Truck, Inc. has its Equal Opportunity policy on file with the Commonwealth of Pennsylvania. If so, state the date and the agency in which it has been filed.

■ Describe in detail any publicity or publications used to promote minority hiring.

Mack's Equal Employment Opportunity programs and policy are no different than its affirmative action program. Logically, the reasoning compelling non-disclosure would apply equally to this information as well. However, as a practical matter, its policy statement regarding equal employment opportunity is a matter of public record. If not filed formally with the Commonwealth, the policy statement probably can be found posted in the company offices or included in company handbooks or the collective bargaining agreement. In recognition of this fact, Mack shall provide plaintiff with any formal statement of equal employment opportunity policy which it has. In complying with this directive Mack need not disclose any of its equal employment opportunity program to the extent that it comprises part of its affirmative action program.

■ Mack will also be required to inform plaintiff of publicity or publications, if any, used to promote hiring of blacks. Although arguably part of its affirmative action program, this information is disseminated to the general public. Obviously, that is its purpose. Therefore, the justifications for denying access to the affirmative action programs are not present and the reason for granting access to the equal employment opportunity policy statement is present.[4] Accordingly, subject to the limitations expressed in Part II, the order of the magistrate is affirmed as to Interrogatories Numbers 11 and 25 and reversed as to Number 9.

■ In Interrogatory 18 plaintiff inquired of Mack whether it had

change[d] its personnel policy toward Blacks and other minorities after passage of the Civil Rights Act in 1964 [and] if so, [to] explain in detail the steps it took in changing its policy and to provide a racial identity breakdown for each department at Mack Truck, Inc. (Allentown and Macungie plants) . . . for the years July 1970, July 1973, July 1976, July 1977.

The first part of this interrogatory requires Mack "to draw too many opinions about too many employees to require answering at this point in time". *Evans v. Local Union 2127, International Brotherhood of Electrical Workers,* 313 F.Supp. 1354, 1361 (N.D. Ga.1969). Although an interrogatory which requires formulation of an opinion is not *per se* impermissible, *Sargent Welch Scientific Co. v. Ventron Corp.,* 59 F.R.D. 500, 502 (N.D.Ill.1973), *Besly-Welles Corp. v. Balax, Inc.,* 43 F.R.D. 368, 373 (E.D.Wis.1968), *Hartsfield v. Gulf Oil Corp.,* 29 F.R.D. 163, 165 (E.D.Pa.1962), Fed.R.Civ.P. 33(b), it must be phrased with particularity. *Heritage Furniture, Inc. v. American Heritage, Inc.,* 28 F.R.D. 319, 320 (D.Conn.1961). An interrogatory of this type must be considered on its own merits and by "practical considerations of whether the need for the information outweighs the prejudice and burden to the interrogated party in divulging it". *Roberson v. Great American Insurance Companies of New Hampshire,* 48 F.R.D. 404, 414 (N.D.Ga.1969). *See also Superior Coal Co. v. Ruhrkohle, A. G., supra.* If such an interrogatory eliminates unnecessary testimony, avoids wasteful preparation, narrows the issues, leads to relevant evidence or generally expedites fair disposition of the lawsuit and serves any other substantial purpose sanctioned by discovery, the court should require response. *Leumi Financial Corp. v. Hartford Accident & Indemnity Co.,* 295 F.Supp. 539 (S.D.N.Y. 1969). Presently, this interrogatory is too vague and broad to enable Mack to answer

---

4. Mack need only provide information relating to hiring of blacks. See Part II.

meaningfully. "Personnel policy" is susceptible of innumerable definitions and could include formal statements of policy as well as informal practices. The latter term could be interpreted in as many ways as those who interpret it. *Cf. Jewish Hospital Association of Louisville, Kentucky, Inc. v. Struck Construction Co.*, 77 F.R.D. 59, 60 (W.D.Ky.1978) (interrogatory asking what plaintiff had done to demonstrate acting with due diligence in investigating violations of 15 U.S.C. § 1 held overbroad and ambiguous), *Tsangarakis v. Panama Steamship Co.*, 41 F.R.D. 219, 220 (E.D.Pa.1966) (objections to vague interrogatories sustained), *Wedding v. Tallant Transfer Co.*, 37 F.R.D. 8, 10 (N.D.Ohio 1963) ("details in full of the accident report" held "too indefinite"). Moreover, plaintiff, a black individual, cannot seek discovery with respect to other minorities. *Johnson v. Southern Railway Co.*, 19 EPD at 6645.

■ The second focus of this interrogatory, racial composition, shall be limited to plaintiff's department at the Allentown facility. A collective bargaining agreement that applied only to his bargaining unit employees governed plaintiff's terms and conditions of employment. His allegations concerned only it. Too, most of the clerical employees are non-union. A separate section of the local collective bargaining agreement covers those who are unionized. There is no employee interchange or job movement between union or non-union clerical employees and the unionized bargaining unit production employees because of their different job duties, skills and applicable practices. *See Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (affirming denial of plaintiff's motion to compel information about all company employees where discrimination against only one employee alleged in complaint), *Equal Employment Opportunity Commission v. Packard Electric Division*, 569 F.2d 315, 318 (5th Cir. 1978) (in the context of an investigation of an individual complaint it was proper to focus on the employing unit or work unit). *Johnson v. Southern Railway Co.*, 19 EPD at 6644 (Title VII discovery limited to positions with which plaintiff had been "somehow connected"), *Evans v. Local Union 2127, International Brotherhood of Electrical Workers*, 313 F.Supp. at 1361 (discovery as to supervisory and clerical personnel considered irrelevant to plaintiff's attack against employer and union). Also at present the racial composition of other departments at the Allentown facility are irrelevant to the claims which plaintiff made. His inability to represent all blacks at Mack has already been determined. *See McClain v. Mack Trucks, Inc.*, 81 F.R.D. at 733. Accordingly, the order of the magistrate directing Mack to answer Interrogatory 18 is reversed in part and affirmed in part. Mack shall answer only the second part dealing with the racial identity of plaintiff's department at Mack's Allentown facility, excepting supervisory and clerical employees. To this extent plaintiff's motion to compel is granted.

Plaintiff also requested Mack to

■ State all contracts that Mack Truck, Inc. has with the Commonwealth of Pennsylvania and any other local governments in the Commonwealth of Pennsylvania.

■ State whether any work done by Mack Truck, Inc. is done pursuant to a contract with any department of the United States Government. If the answer is yes, state:

(a) the nature of each such contract;

(b) the name of the contracting department or agency of the United States Government;

(c) each plant or facility at which any such work is done;

(d) whether Mack Truck, Inc. is required by virtue of such contract to maintain records which indicate the race of employees of the company for purposes of the Federal Contract Compliance Review. If so, describe and designate each such record;

(e) whether Mack Truck, Inc. has submitted any reports to any department of the United States Government which includes a racial identity breakdown of employees. If so, describe and

designate the date and the agency to which each report was submitted.

The magistrate ordered Mack to apprise plaintiff of all its contracts with the Commonwealth and local governments therein and to reveal whether Mack performed any contractual work with any department of the federal government, and if so, to describe the nature of the contract as requested by plaintiff.

 Relevancy in Rule 26 cannot be equated with admissibility at trial, *Holliman v. Redman Development Corp.*, 61 F.R.D. 488, 490 (D.S.C.1973), *Carrier Manufacturing Co. v. Rex Chainbelt, Inc.*, 281 F.Supp. 717, 718 (E.D.Wis.1968), or with the very narrow issue presented by the facts. *Brunswick Corp. v. Chrysler Corp.*, 291 F.Supp. 118, 120 (E.D.Wis.1968); *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572, 574 (S.D.N.Y.1960). Rather, the test of relevancy is the subject matter of the action. *Devex Corp. v. General Motors Corp.*, 275 F.Supp. 310, 313 (D.Del.1967); *Luey v. Sterling Dry, Inc.*, 240 F.Supp. 632, 634–35 (W.D.Mich.1965); *Novak v. Good Will Grange No. 127, Patrons of Husbandry, Inc.*, 28 F.R.D. 394, 395 (D.Conn.1961). Answers to the second interrogatory may provide statistical information suggesting a pattern of discrimination, lead to admissible evidence or otherwise suggest employment discrimination.[5] *See Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To deny plaintiff access to the information requested in Interrogatory Number 6 might divest plaintiff of potentially relevant informa-

tion. However, of Interrogatory Number 4, plaintiff has not even attempted to demonstrate relevance, which is particularly obscure since plaintiff's § 1983 causes of action have been dismissed. Accordingly, the order of the magistrate directing Mack to respond to Interrogatory Number 6 is affirmed with the limitations imposed in Part II. As to Interrogatory Number 4 the order of the magistrate is reversed and plaintiff's motion to compel is denied.

Continuing, plaintiff requested Mack to State whether Mack Truck, Inc. has been subjected to a review by the United States Government office of Federal Contract Compliance since 1970. If so, describe in detail.

 State whether Mack Truck, Inc. has been subjected to an investigation conducted by any division of the United States Department of Labor at any time since 1970. If so, describe in detail.

 Has Mack Truck, Inc. ever been sued for alleged discriminatory actions prior to the present litigation? If so, state:

(a) the court in which each action was instituted;

(b) the date the action was filed;

(c) the result of each case that has been concluded.

The magistrate ordered Mack to inform plaintiff whether the United States Government of Federal Contract Compliance has reviewed Mack since 1970, whether the United States Department of Labor has investigated defendant since 1970 and whether any private litigant has ever sued defendant for allegedly discriminatory actions prior to this suit, and if so, to detail the nature of the review, investigation or suit.

 The Fifth Circuit's strict rule of confidentiality regarding EEOC complaints, internal complaints and government investigations emphasizes the dangers of disclosure: inhibiting employees from bringing

---

**5.** Mack has represented that it has made available to plaintiff extensive statistics and information on employee absenteeism and discipline and discharge for excessive absenteeism. Defendant's brief at 12 n. 8.

such charges and employers from entering into the conciliation process. *Johnson v. Southern Railway Co.*, 19 EPD at 6645. As to suits instigated by private parties, the Fifth Circuit ruled that "once a discriminatory suit reaches the litigation stage, the process becomes a public one". *Johnson v. Southern Railway Co.*, 19 EPD at 6645. In other words, the justifications underlying confidentiality are not present. One stricture, however, requires attention. Using the broadest possible subject matter for this suit, racial discrimination in employment practices, suggests allowing plaintiff to discover litigation instituted against Mack and relating to racial discrimination in hiring, seniority, promotion, classification and so on. However, plaintiff has alleged discrimination in disciplinary measures and discharge only. Undoubtedly, statistical information may be used to establish that the treatment of a particular employee follows a general pattern of employer discrimination, but this principle does not alone determine precisely what statistical information is relevant in the case at bar. In the context of an individual plaintiff alleging illegal discharge, information concerning Mack's litigation history in hiring, seniority, promotion, classification and so on, seems one step beyond the parameters of relevancy in its broadest sense. *Equal Employment Opportunity Commission v. Packard Electrical Division*, 569 F.2d at 318. To cross over the line plaintiff must show a more particularized need and relevance. *Marshall v. Westinghouse Electric Corp.*, 576 F.2d at 592. *See also Goeth v. Gulf Oil Corp.*, 19 EPD at 7337 (information regarding defendant's allegedly discriminatory hiring practices not relevant because defendant had hired plaintiff). Plaintiff has failed to do so. Accordingly, that part of the magistrate's order directing Mack to answer Interrogatory Number 29 is affirmed, subject to the limitations articulated above and in Part II. That part of the magistrate's order directing Mack to answer Interrogatories Number 7 and 8 is reversed and plaintiff's motion to compel answers thereto is denied.

## II

A district court exercises discretion in delineating the scope of discovery. *Shultz v. Haxton*, 50 F.R.D. 95, 98 (N.D. Miss.1970), *Stonybrook Tenants Association, Inc. v. Alpert*, 29 F.R.D. at 168. Keeping in mind that the subject matter of plaintiff's action is alleged racial discrimination in employment practices, the following restrictions are placed on all interrogatories which Mack has now been required to answer. First, answers shall be restricted geographically to Mack's Allentown facility. The four American manufacturing and assembly plants are operated independently of each other as far as management, personnel, employment records, hiring, promoting, discharging and other employment practices are concerned. Mack's hourly paid bargaining unit production employees are covered by a different local collective bargaining agreement at each facility. Each has its own separate industrial relations and personnel staff who administer employment policies and maintain employment records independently and separately from each other. With the limited exception for Allentown and Macungie, there is no employee movement or interchange between these facilities. An employee who quits his job at one facility and obtains employment with another relinquishes his prior seniority. Additionally, bargaining unit production employees cannot make job movements into any of Mack's other facilities or job classifications. *See Grigsby v. North Mississippi Medical Center*, 586 F.2d 457, 460 (5th Cir. 1978) (affirming order limiting discovery in class action racial discrimination suit to facilities where named plaintiffs worked), *Equal Employment Opportunity Commission v. Packard Electric Division*, 569 F.2d at 318 (affirming district court finding that plant-wide workforce breakouts not shown to be relevant), *Goeth v. Gulf Oil Corp.*, 19 EPD ¶ 9227, 7337 (S.D.Tex.1979) (discovery limited to plant where plaintiff worked), *Equal Employment Opportunity Commission v. Prestolite Battery Division of Eltra Corp.*, 14 EPD ¶ 7585. 4894 (W.D.Okla.1976) (discovery strictly limited to defendant's

employment practices at offices where plaintiff worked).

Similarly, Mack's answers shall be limited to the time period of plaintiff's employment, which allows plaintiff to ascertain information for a period of five years prior to his termination. *See James v. Newspapers Agency Corp.*, 591 F.2d 519 (10th Cir. 1979) (4 years), *General Insurance Company of America v. Equal Employment Opportunity Commission*, 491 F.2d 133 (9th Cir. 1974) (8 years held excessive), *Cormier v. PPG Industries*, 452 F.Supp. 594 (W.D.La. 1978) (5 years), *Brown v. Ford Motor Co.*, 19 EPD ¶ 8969 (N.D.Ga.1978) (4 years), *Sanday v. Carnegie-Mellon University, supra* (5 years), *Word v. International Minerals & Chemical Corp.*, 11 FEP 281 (N.D.Miss.1974) (2 years prior to filing EEOC complaint).

Finally, Mack's answers shall be limited to the subject matter of racial discrimination. Whether Mack discriminates against employees on the basis of religion, creed, gender or national origin is wholly irrelevant to his present claim. *See Johnson v. Southern Railway Co.*, 19 EPD at 6645 (black employee could not discover defendant's practices concerning ethnic groups other than blacks).